# National Bank of West Grove v. Earle.

*Equity—Insolvency—Plan to secure creditors—Corporations—Fraud.*

A bill in equity to secure the dismissal of the managers of a plan to pay the unsecured creditors of an insolvent, will be dismissed where there is no proof of the fraud or bad faith averred in the bill, and it is shown that under the plan the managers alone were to declare when it should be operative, and that they did not declare it operative because the assent of certain creditors and of the stockholders of certain corporations, absolutely necessary to the plan could not be obtained.

*Attorney at law—Attorney and client — Professional communication—Bill of discovery.*

An attorney at law cannot by a bill of discovery be compelled to disclose advice given to his client.

Argued March 22, 1900.    Appeal, No. 57, Jan. T., 1900, by plaintiff, from decree of C. P. No. 1, Phila. Co., Dec. T., 1899, No. 672, dismissing bill in equity in case of the National Bank of West Grove v. George H. Earle, Jr., and Richard Y. Cook, managers of the plans for the reorganization of the affairs of the Chestnut Street Trust and Saving Fund Co., of the Chestnut. Street National Bank of the Singerly Pulp Co., and of William M. Singerly and John G. Johnson.    Before GREEN, C. J., MC-COLLUM, DEAN, FELL and MESTREZAT, JJ.    Affirmed.

Bill in equity to remove trustees and for discovery.

Defendants demurred to the bill.    George H. Earle, Jr., and Richard Y. Cook also filed answers.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing the bill.

*George B. Johnson* and *James W. M. Newlin,* for appellants, cited Bryson v. Wood, 187 Pa. 369.

*Frank P. Prichard,* with him *John G. Johnson,* for appellee.

OPINION BY MR. JUSTICE DEAN, May 14, 1900:

The plaintiff is a judgment creditor of the late William M. Singerly, to the amount of $5,000, with interest, and among others, was a party to a plan projected for the payment of Singerly's unsecured creditors.    Two of defendants, Earle and Cook, were the proposed managers of the plan, and are also trustees for the Chestnut Street Saving Fund Company and Chestnut Street National Bank, both the latter being creditors in very large amounts.    John G. Johnson, the other defendant, is of counsel for Earle and Cook in their capacity as managers and trustees.

The plan for the benefit of the unsecured creditors of which Earle and Cook were nominated managers, is dated Decem-

ber 27, 1897. It proposed that the assets of Mr. Singerly, so far as they consisted of stock in the " Record Publishing Company," should be assigned to a representative of the creditors; that these creditors should be divided into three classes, A, B and C. The first class was to be made up of those who had liens against either the publishing company, or preferred claims against the bank and trust company, or were willing to advance money to bring about a reorganization of the publishing company; the second, of those who had claims against the publishing company, or claims secured by its stock; the third, of all creditors not embraced in the first two classes. The managers, acting under the advice of Counsellor Johnson, were to interpret the plan and determine the classification of the creditors. At that time, the capital stock of the publishing company consisted of $1,000,000, nearly all nominally owned by Mr. Singerly, and nearly all pledged by him to different persons and corporations to secure loans to himself, either as drawer or indorser. There was also upon the property a mortgage of $700,000. This plan suggested an increase of the capital stock to $3,000,000 by the issue of $2,000,000 of preferred stock, out of which last the mortgage was to be paid; the balance, $2,300,000, common and preferred, was to be distributed at par among the creditors, according to their legal standing as credirors, as specified in the agreement. It also gave Mr. Singerly the right to redeem the stock within six years. Of course, this plan necessarily required, before it could become practicable or effective, the co-operation of Mr. Singerly, the pledgees of the stock as collateral, and the assent, substantially, of all the creditors. Without the performance of the conditions incident to and precedent to reorganization, the powers intended to be conferred upon Earle and Cook could not be exercised by them, nor could they incur any responsibility to creditors under it. The original plan, as noticed, was afterwards, in some particulars, amended. An assignment was made to Earle and Cook as managers by Singerly of all the stock and property of the record company, but this was made subject to certain conditions, among others, the explicit one, that they, the managers, alone should decide and declare when the plan had become operative. Until they so decided, it was only a proposal or suggestion. Singerly did not sign the plan; he did not declare it to be binding upon him-

self, nor could he by his act have bound creditors to consent to it.

The plaintiff filed this bill, averring the defendants to be trustees for creditors under this plan; that they had interests, personal and official, hostile to it and to the general creditors, and had acted fraudulently and in bad faith. It therefore prayed for their removal as trustees or managers, and for discovery by answers to certain interrogatories, etc.

Earle and Cook, the alleged trustees, denied positively all averments of the fact of bad faith on their part; there was no proof to sustain the bill in this particular. Further they demurred principally on these grounds : 1. There is no averment that the alleged trustees had declared the plan operative. 2. That, on the contrary, the bill itself showed that the plan had never been declared operative. 3. There is no averment that the necessary assents of creditors ever were given, or that the facts ever existed by which they would have been warranted in declaring the plan operative. The court below, without opinion filed, sustained the demurrer and dismissed the bill, and from this decree plaintiff brings this appeal.

It is very clear, that the reorganization contemplated by this plan, could not, under our corporation laws, have been carried out without the assent of a majority of the stockholders expressed at a stockholders' meeting called after due notice, for that purpose. While Singerly was the equitable owner of a large majority of the stock, whether he was the legal owner for voting purposes, is very doubtful, for it is clear that nearly all his shares were in the hands of creditors under pledge for his debts. How could he or the managers obtain them without payment of the debts? These debts, it is true, by the plan, were to be paid out of the increased issue of stock, but the possession of the stock for reorganization purposes must first be in the managers or Singerly, weeks before the issue of new stock. It is an absurd proposition, that creditors who held the old stock, would, without payment, have surrendered it, that thereby the liability of the corporation might be increased $2,000,000. The defendants, in their answer, aver that they could not get the assent of this class of creditors to the plan, nor obtain the stock held by them for reorganization purposes. It was not necessary to sustain the demurrer, that the reason

for not declaring the plan operative should be averred but this, as one of them, is given; on its face, it is probable and convincing.    But, in the absence of any specified reason, the court below was right in sustaining the demurrer.    The bill and exhibits thereto show, that unless the plan, in the judgment of the alleged trustees, had so far proceeded, as to make it practicable and operative, they were not to so declare.    In a scheme involving such large interests as this one, and depending for success on so many contingencies, a court of equity would not usurp the discretion of the trustees and decide, that they should have decided the plan operative; on clear averment and proof that the conditions precedent to its success existed, and that the trustees either arbitrarily or fraudulently refused to perform a plain duty, the court might have sustained the bill. There is no sufficient averment of such fact of bad faith in the bill; there is no proof of it; there is a flat denial in the answer and demurrer.    While the bill is quite elaborate and argumentative, a mere reading of it in connection with the answer and demurrer convinces us that it should be dismissed as to Earle and Cook on the single ground already mentioned; therefore, we do not consider the others.    As to the other defendant, Mr. Johnson, from whom a discovery is sought, because he was of counsel for the trustees in this and other proceedings, he has demurred, because " a bill of discovery is not the proper method, if there be any proper method, to compel counsel to disclose the advice given to his clients."    It is not necessary for us to elaborate on this averment; it is a complete answer to plaintiff's prayer.    If it were not, then a man about to become involved in complicated business affairs, whereby he would incur grave responsibilities, should run away from a lawyer rather than consult him.    If the secrets of the professional relation can be extorted from counsel in open court, by the antagonist of his client, the client will exercise common prudence by avoiding counsel.

The decree of the court below is affirmed, and appeal dismissed at costs of appellant.