## Claster v. Citizens General Hospital

*Louis M. Tarasi,* for plaintiff.
*Louis B. Loughren,* for defendant.

FRANKSTON, *Administrator,* June 4, 1980— On April 15, 1980, defendant filed a motion for sanctions seeking, inter alia, to compel plaintiff to answer certain questions propounded at his oral deposition. Based upon absence of timely opposition to the motion, 37 Pa. Code §171.45, we entered an order on April 30, 1980, which required plaintiff to respond to the questions. The order crossed in the mail with plaintiff's reply to motion for sanctions, which was filed on May 2, 1980.

On May 5, 1980, plaintiff requested reconsideration of the motion and our order in light of his reply. Because of their applicability to medical negligence cases generally, we shall address the issues presented in plaintiff's reply to the motion.

The pertinent portions of plaintiff's deposition, beginning at page 29, are set forth below. We have

italicized the questions which are the subject of the present dispute.

. . .

"Q. Have you had occasion to review the hospital records from Citizens General prior to this deposition?

A. I have seen I think a small part of the records but that has been some time ago.

Q. Have you reviewed the Citizens General records before filing your complaint and amended complaint in the law suit?

A. Certain items, but primarily I had proceeded based on advice of counsel.

Q. Have you had expressed to you by any physician an opinion that the care rendered to Ian fell below the standard required?

A. Had I had that expressed to me?

Q. Yes.

A. I have had it expressed indirectly to me through counsel, yes.

Q. From whom did that opinion emanate?

Mr. Isacke: I object to that. Don't answer the question.

By Mr. Loughren:

Q. Who do you intend to call as an expert witness at the time the case is called, sir?

Mr. Isacke: It is not determined yet.

By Mr. Loughren:

Q. What knowledge do you have, sir, about the standard of care required of hospitals in treating patients such as your son, Ian?

A. A slight degree from my background in law plus basically that is why I employed counsel who is quite expert in that field.

Q. You have no personal knowledge yourself relative to what standards are required of hospitals in general, do you, sir?

A. I do virtually actually no litigation of that type.

Q. You are not a physician of course?

A. That is correct.

Q. And you have no medical background in terms of formal education, do you?

A. None.

. . .

Q. The amended complaint that you have filed in Paragraph 7 alleges that the death of your son was premature and unnecessary. What facts do you base that statement on, sir?

Mr. Isacke: You mean other than advice of counsel?

Mr. Loughren: No I mean what facts.

. . .

The Witness: It really is the information discovered by counsel.

By Mr. Loughren:

Q. *What information is that, sir?*

Mr. Isacke: I object to that as being part of the work product, an attorney-client privilege.

Mr. Loughren: This is a sworn complaint, and we will move for sanctions before the administrator, and come back and take another deposition.

The Witness: I can answer this to a degree. At the time of Ian's death, I was terribly concerned because—

Mr. Isacke: Wait a minute. I object to the question and I am not going to have him answer it.

Mr. Loughren: Off the record.

(Discussion off the record.)

The Witness: I would say this. When Ian died, he was simply bloated with liquid. When I received the bill from the hospital, it indicated that he had received either 22 or 23 units of intravenous, and in the approximately nine hour period that he was in

the intensive care unit, this seemed like an unbelievable amount. I spoke to the undertaker who indicated the reason that he was so bloated were his tissues were saturated with solution, and because of this I felt there was a situation which needed investigating, and I then hired counsel.

• • •

Q. In Paragraph D, in what way did the hospital physicians, nurses, or other medical personnel fail to conform to the customs of the medical community relative to the diagnosis, care, and treatment of your son?

A. Again, I would say that from my own knowledge I have no knowledge of this, that I have relied on counsel who has told me this is what their investigation has determined. Candidly dealing with the facts have been very difficult and I have relied on counsel.

Q. What steps should have been taken that were not taken, according to your information, to prolong your son's life?

A. Again counsel has told me that there were steps and procedures which should have been followed.

Q. *What were those steps and procedures?*

Mr. Isacke: I object to the answer of those questions.

Mr. Loughren: I am going to give you notice, Bob, I am going to notice your deposition unless we have him answer these questions.

The Witness: I can answer it.

Mr. Isacke: I object to him telling you what it is that we have told to him which constitutes part of our attorney-client privilege and the work product."

• • •

From this excerpt, it can be seen that plaintiff does not object to discovery of the facts which were

known to him through personal observation and investigation and which prompted him to seek legal advice regarding the possibility of instituting an action against defendant. In fact, most of this information has been disclosed in the response ultimately given to the first disputed question.

What plaintiff is objecting to is discovery of information made known to him by his attorney as a result of counsel's investigation of the case, which includes facts and opinions of a medical expert (who is not expected to testify) concerning defendant's alleged negligence. Plaintiff's objections to the disputed questions are based upon the attorney-client privilege: Pa.R.C.P. 4003.3 and Pa.R.C.P. 4003.5(a)(3). The pertinent portions of the Judicial Code, the Rules of Civil Procedure and the explanatory notes thereto read as follows:

### 42 Pa.C.S.A. §5928

"§5928. Confidential communications to attorney

"In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."

### Pa.R.C.P. 4003.1

"Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or

other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Pa.R.C.P. 4003.3

"Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics."

Explanatory Note to Pa.R.C.P. 4003.3
• • •

"The essential purpose of the Rule is to keep the files of counsel free from examination by the opponent, insofar as they do not include written statements of witnesses, documents or property which belong to the client or third parties, or other matter which is not encompassed in the broad category of the 'work product' of the lawyer. Documents, otherwise subject to discovery, cannot be immunized by depositing them in the lawyer's file. The Rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental im-

pressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more."

• • •

## Pa.R.C.P. 4003.5(a)(3)

"(3) A party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, except a medical expert as provided in Rule 4010(b) or except on order of court as to any other expert upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate."

Explanatory Note To Pa.R.C.P. 4003.5

• • •

"If the expert is not expected to be called at the trial, the situation is quite different. The special procedures listed above will not be applicable. Under subdivision (a)(3) of the Rule, *no* discovery of such a witness is permitted, except discovery of a medical expert under Rule 4010(b), infra, unless there is an order of court. To obtain this order of court, the inquirer must prove 'exceptional circumstances' under which there is no practical way to find the facts or opinions by some other means." (Emphasis in original.)

• • •

The purpose of the attorney-client privilege is to foster an open dialogue between the client and counsel: In re Westinghouse Elec. Corp. Uranium Contracts Litigation, 76 F.R.D. 47 (W.D. Pa. 1977).

However, the privilege applies solely to communications *from* the client *to* his attorney: Nelson v. Himes, 62 D. & C. 2d 748 (1973).

In the instant case, plaintiff is not being asked to disclose the substance of any such communication. Rather, defendant's questions seek to discover the specific facts upon which plaintiff bases certain general allegations made in his amended complaint. These facts may have been known to plaintiff through personal observation or they may have been communicated *to* plaintiff *from* counsel or *from* another source. In either case, such facts are not within the narrow parameters of the privilege and the objections made on that basis must be overruled.

As to the contention that the information sought constitutes the "work product" of counsel, we read Pa.R.C.P. 4003.3 as protecting from discovery documents, reports and other tangible writings of an attorney only insofar as they contain his legal opinions, strategies, comments and mental cogitations with regard to the handling of his client's case. There is no indication in either the rule or commentary that the limited protection of Pa.R.C.P. 4003.3 was intended to include *facts* upon which particular allegations of the complaint are based or *contentions* as to which steps and procedures should have been followed in the treatment of decedent herein. Further, Federal decisions such as B. & S. Drilling Co. v. Halliburton Oil Well Cementing Co., 24 F.R.D. 1 (S.D. Tex. 1959), and Forsythe v. Baltimore & O. R. Co., 15 F.R.D. 191 (W.D. Pa. 1954), hold that inquiries comparable to those made by defendant herein do not violate the Federal "work product" rule which, unlike Pa.R.C.P. 4003.3, requires a showing of substantial need before discovery will be permitted: 10 Goodrich-

Amram 2d §4003.3:3. Consequently, the objections based upon the "work product" rule and Pa.R.C.P. 4003.3 are overruled.

The final basis for objection presents a problem which was frequently addressed by the courts under the former rules of discovery. Although a variety of results were reached, based upon the wording of the particular questions posed and the circumstances of each case, the courts generally agreed that in a medical negligence action, defendant is entitled to know the facts and theories upon which the allegations of plaintiff's complaint are based. See Jankowski v. Karakashian, 2 D. & C. 3d 220 (1976); Washkow v. Albert Einstein Medical Center, 71 D. & C. 2d 129 (1975); Roseman v. Poppe, 67 D. & C. 2d 313 (1975); cf. Blum v. Parkview Hospital, 2 D. & C. 3d 345 (1976).

Further, a defendant may also discover the nature and content of the deviations from proper medical practice with which he is charged, *even though this may require expression of matters of expert opinion:* Cutsler v. Balshi, 71 D. & C. 2d 725 (1975); cf. Miller v. Perrige (No. 2), 71 D. & C. 2d 481 (1975).

We reiterate that these cases were decided against the background of the former, more restrictive discovery rules. Effective April 16, 1979, the rules were liberalized to encourage settlements by making *more* information available concerning the strengths and weaknesses of an opponent's case. See Whitted v. Butler, 12 D. & C. 3d 52 (1979); Bryant v. Southwark Realty Co., 9 D. & C. 3d 355 (1979).

The purpose of Pa.R.C.P. 4003.5(a)(3) has been said to be "to encourage parties to consult freely and openly with experts by minimizing the likelihood that the information provided to an expert and

the opinions that the expert forms may be used against any party who obtained or specially employed this expert." Goldblum v. Ins. Co. of North America, 11 D. & C. 3d 354, 356 (1979). Thus, absent exceptional circumstances, a party may *not* seek to discover the expert opinion of a consultant who is not expected to testify by addressing interrogatories to him under Pa.R.C.P. 4003.5(a)(1) or by deposing him pursuant to Pa.R.C.P. 4007.1.

In addition, although it is not expressly provided in the rule, Pa.R.C.P. 4003.5(a)(3) has been construed to protect the names and addresses of said consultants from discovery: Goldblum v. Ins. Co. of North America, 11 D. & C. 3d 354 (1979); Philadelphia Electric Co. v. Nuclear Energy Liability-Property Ins. Assoc., 10 D. & C. 3d 340 (1979). We agree that the anonymity of consultants should be maintained since it encourages the consultant to be frank in his evaluation of the case, insulates him from potential harassment and as a result, provides the parties with greater access to expert medical opinion.

However, in asking the disputed questions, defendant is seeking neither the identity of plaintiff's expert consultant nor the substance of any expert opinion *adverse* to plaintiff's case. On the contrary, defendant is asking for the facts and contentions which *support* plaintiff's cause of action, or, in other words, a more specific explanation of the allegations in the complaint. We see nothing improper in this procedure and, in fact, find it preferable to the filing of preliminary objections since it is likely to be less time-consuming and more productive in the long run. Consequently, the objection pursuant to Pa.R.C.P. 4003.5(a)(3) is overruled.

We note that in a medical negligence action, unlike other cases, the very expertise of defendant is at issue. See Cutsler v. Balshi, supra. In all but the most simple and obvious situations, plaintiff must present favorable medical expert testimony in order to prevail: Smith v. Yohe, 412 Pa. 94, 194 A. 2d 167 (1963); Ragan v. Steen, 229 Pa. Superior Ct. 515, 331 A. 2d 724 (1974). Since plaintiff ordinarily lacks such expertise, he must necessarily rely upon information obtained from others in formulating the sworn allegations of his complaint. However, we do not believe the mere fact that plaintiff's complaint is based in part upon opinions and other information obtained from an expert consultant should prevent the defendant from discovering the specifics of the allegations against him.

In reaching this conclusion, we are mindful that our ruling may permit the defendant to obtain indirecty through the plaintiff certain data which he could not obtain directly from the consultant: Pa.R.C.P. 4003.5(a)(3). A similar contention was rejected in Hilgert v. Fish, 8 D. & C. 3d 271 (1978), and we find it to be unpersuasive in the instant action since the discovery sought does not contravene the purposes of Pa.R.C.P. 4003.5(a)(3) and is required to enable defendant to prepare his defense.

One of the purposes of the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, as amended, 40 P.S. §1301.101 et seq. is "to establish a system through which a person who has sustained injury . . . can obtain a *prompt determination* and adjudication of his claim and the determination of *fair and reasonable compensation.*" 40 P.S. §1301.102. (Emphasis supplied.) We believe

our ruling today to be supportive of this purpose as well as the general purposes of the rules of discovery to encourage early settlements and discourage trial by ambush.

Therefore, we conclude that the questions asked were proper and they must be answered. Accordingly, we enter the following

## ORDER

And now, June 4, 1980, upon reconsideration of our order dated April 30, 1980, and upon consideration of the motion for sanctions filed April 15, 1980, and the reply thereto filed May 2, 1980, it is hereby ordered and decreed that within 20 days from the date this order is certified from the record, plaintiff shall serve written response to (1) the question posed at page 31 of plaintiff's deposition concerning the facts upon which the allegations of paragraph 7 of the complaint are based; and (2) the question posed at page 35 as to the steps and procedures which should have been followed by defendant in treating plaintiff's decedent. Failure to comply with this order shall result in imposition of appropriate sanctions upon petition of defendant.

All further relief requested is denied.