## Messner v. Korbonits

*Steven M. Feldman,* for plaintiffs.
*John S. J. Brooks,* for defendant Korbonits.
*William E. Rapp,* for defendant Coggins.
*Edward J. Carney,* for defendant Chester County Hospital.
*John J. Walsh, Jr.,* for additional defendant Children's Hospital of Philadelphia.

SMITH, *J.,* August 3, 1982—This is a medical-malpractice action arising out of personal injuries, including brain damage, suffered by plaintiff Melis-

sa Lynn Messner at the time of her birth on March 1, 1971, and during the treatment she received thereafter.

Original defendants are: Charles W. Korbonits, M.D., the obstetrician who delivered Melissa and treated her mother, plaintiff Beverly O'Connell, during childbirth; Eugene J. Coggins, M.D., the pediatrician who first treated Melissa following her birth; Milan Q. Felt, M.D., a neurosurgeon to whom defendant Coggins referred Melissa for surgery and other treatment; and Chester County Hospital where Melissa was born and where some of the early treatment was provided. Children's Hospital of Philadelphia, where later treatment was performed, and A.K. Hodson, M.D., a subsequent treating physician, were joined as additional defendants.

Suit was filed in the present action on or about November 5, 1980. All defendants filed answers and new matter raising the defense of statute of limitations. In reply to the new matter, plaintiffs averred, inter alia, that they neither knew nor had reason to know of the negligence of defendants or of the causal relationship between defendants' treatment of Melissa's injury until September 25, 1979, at the earliest. Plaintiffs also made this averment in their complaint in anticipation of the affirmative defense.

On September 4, 1981, defendants took the deposition of plaintiff Beverly A. O'Connell. During the course of the deposition, Mrs. O'Connell was questioned about her consultations with Richard L. Gerson, Esq., and John A. Luchsinger, Esq., attorneys she had retained prior to engaging present counsel. It is noted in regard to this deposition the usual stipulations were made by counsel prior to the deposition, including a stipulation that all objections except as to the form of questions and answers were reserved until trial.

On February 8, 1982, defendants took the deposition of John A. Luchsinger and, at that time, plaintiffs' counsel objected to the production of any documents from Mr. Luchsinger's file that were privileged or reflected his impressions on the merits of plaintiffs' case. On this occasion plaintiffs'. counsel indicates specifically that he was reserving objections as to the attorney-client privilege and also as to Mr. Luchsinger's work-product privilege. During the course of the deposition, however, Mr. Luchsinger's file, "somewhat stripped," was presented and so, too, certain memoranda of Mr. Luchsinger. As well, an original letter authored by Mr. Gerson that "Melissa had no legal action that he wished to pursue" was presented.

The deposition of Richard L. Gerson was taken on February 9, 1982, and plaintiffs' counsel objected to the production of documents from Mr. Gerson's file on the basis of the attorney-client privilege. Plaintiffs' counsel also objected to, and Mr. Gerson refused to answer, a number of questions involving Mr. Gerson's communications with plaintiff Beverly O'Connell and his investigation of the case.

Within the foregoing context, then, we are asked to determine:

1. Does the attorney-client privilege protect communications made by the attorney to the client?

2. Has plaintiff waived the attorney-client privilege?

3. Is the administration of justice best served by our order requiring counsel to answer questions and produce documents?

The attorney-client privilege is one of the oldest privileges known to the law. It has long been established in the Commonwealth of Pennsylvania that an attorney may not disclose the confidential com-

munications of a client. Moore v. Bray, 10 Pa. 519 (1899). The specific evidentiary rule that an attorney may not testify "to confidential communications made to him by his client" was incorporated under the statutory law of Pennsylvania by the Act of May 23, 1887, and is now found in section 5928 of the Judicial Code, 42 Pa.C.S. §5928. In this regard it is noted that the limitation of the statutory language to communications made by the client to the attorney does not define the entire scope of the attorney-client privilege, notwithstanding the holdings of certain of our brethren in the trial court.* In this regard we accept the logic found in Commonwealth v. Brown, 116 Pa. Super. 1, 175 A.2d 748 (1934), wherein the Superior Court noted that, in addition to the specific statutory prohibition against an attorney testifying about confidential communications "made to him by his client" there is a general rule protecting the confidentiality of communications by the attorney to his client. There, the court wrote:

"Granting also that the general rule includes communications by the attorney to his client, its purpose is to prevent the attorney's statements from being used as admissions of the client, or as leading to inferences of the tenor of the client's communications." 116 Pa. Super. at 20-21.

This rule is in accord with the general common-law rule set out in 8 Wigmore Evidence, §2320 (McNaughtan rev. 1961):

"That the attorney's communications to the client are also within the privilege was always assumed in the earlier cases and has seldom been brought into

---

*Nelson v. Hemis, 62 D.&C.2d, 748, 749 (1973). See also Eisenmen v. Hornberger, 44 D.&C.2d, 128, 129-30 (1967). Union Carbide Corp. v. Traveler's Indemnity Company, 61 FRD 411, 412 (W.D., Pa. 1973).

question. The reason for it is not any design of securing the attorney's freedom of expression, but the necessity of preventing the use of his statements as admissions of his clients, or as leading to inferences of the tenor of the client's communications—although in this latter respect, being hearsay statements, they could seldom be available at all." (Citations and footnotes omitted.)

In this regard we are further reminded of the existence of Disciplinary Rule 4-101 of the Code of Professional Responsibility which is much more expansive than the historical and statutory privilege. Hence, we conclude that counsel for plaintiffs have appropriately invoked the attorney-client privilege and refused to disclose statements and information obtained by them in the investigatory phases of their representation.

The second question, as to whether plaintiffs' have waived this privilege, is a more knotty issue. As Judge Wyzanski noted in his discussion of the attorney-client privilege, the privilege must be claimed and not waived. United States v. United Shoe Machinery Corporation, 89 Fed. Supp. 357, 358-359 (D. Mass. 1950).

The record shows that Mrs. O'Connell was deposed on September 4, 1981. During the course of the deposition Mrs. O'Connell was asked various questions regarding what she told Mr. Gerson and advices he gave her regarding a potential lawsuit against Drs. Korbonits, Coggins and Felt. Mrs. O'Connell admitted that Mr. Gerson sent her a letter in August of 1977, refusing to pursue her case. When asked the reasons given for the firm's refusal to do so, Mrs. O'Connell testified that Mr. Gerson had told her that there was "no evidence." She specifically denied that he had ever mentioned the statute of limitations or the passage of time as a problem

in the case. Not once did plaintiffs' counsel object to this line of questioning and Mrs. O'Connell testified fully about her conversations with Mr. Gerson. Moreover, in the deposition of Mr. Luchsinger, the subject letter was made available to the various counsel then in attendance, and an apparently "stripped" file of Mr. Luchsinger was made available for the inspection of others as well as certain memoranda he prepared in the investigation of the case. Under these circumstances wherein plaintiffs' counsel permitted Mrs. O'Connell to testify to those communications with counsel in her deposition and by reason of her later selective disclosure of certain material within the claimed privilege, we find that the attorney-client privilege has been waived. Plaintiff seeks to escape the claim of waived privilege by reciting the preliminary stipulation of counsel, at the time of plaintiff's deposition, that all objections were reserved until trial. In claims of privilege we find this assertion most curious. All privileges, and indeed the attorney-client privilege in particular, are means to prevent a disclosure of statements made in confidence. The point is has there been a disclosure of confidence, not whether or not the disclosure ultimately will be admissible in evidence.

Having found the waiver of this privilege, it is unnecessary for us to reach the third issue as to the course in which the administration of justice will be best served.

Lastly, we observe a distinction between the privileges asserted by plaintiff with regard to Messrs. Gerson and Luchsinger. Plaintiff has pleaded that she was without knowledge as to the causal relationship if any, which existed between the injuries suffered by her daughter at birth up until September of 1979, when the representation of Mr. Luchsinger was undertaken. As a result, we cannot

determine in what way the efforts of Mr. Luchsinger would be material to the statute of limitations issue in that there is a period of approximately 14 months for which plaintiff is willing to concede the statute was not tolled. For this reason we are not inclined to order the disclosure of Mr. Luchsinger's file or the resumption of his deposition since we believe defendants have not carried their burden with regard to the relevance of same.

## ORDER

And now, this August 3, 1982, upon consideration of the within motion, it is hereby ordered and decreed that the deposition of Richard L. Gerson, Esq., be resumed and that Mr. Gerson be permitted to:

A. Answer any and all questions regarding

(1) Communications from Beverly A. O'Connell (hereinafter Mrs. O'Connell) to Mr. Gerson regarding:

(a) Whether or not Mrs. O'Connell had contacted another attorney prior to consulting Mr. Gerson;

(b) Mrs. O'Connell's reasons for seeking legal advice from Mr. Gerson; and

(c) The potential causes of Melissa's health problems.

(2) Communications from Mr. Gerson to Mr. O'Connell regarding:

(a) The potential causes of Melissa's health problems including, but not limited to, opinions of experts, both legal and medical, who reviewed the files and records;

(b) The reasons related to Mrs. O'Connell why the "legal action would not be successful" as stated in the letter of August 4, 1977, including any opinions of David Shrager, Esq. and physicians; and

(c) Any advice given to Mrs. O'Connell regarding the advisability of a second legal opinion.

B. Produce all files, records, correspondence, notes and any other documents pertaining to Melissa Lynn Messner including but not limited to:

(1) Letter(s) from David Shrager, Esq., to Joseph Boardman, Esq. regarding a second legal opinion;

(2) Letter(s) and/or report(s) from Seymour Stein, M.D., regarding a review of the records and/or any medical opinions; and

(3) The letter from Richard L. Gerson, Esq., to Steven Feldman, Esq., dated September 3, 1980.