**COREGIS INSURANCE CO., Plaintiff,**

v.

**LAW OFFICES OF CAROLE F. KAFRISSEN, P.C., et. al., Defendants.**

No. CIV.A.98–6769.

United States District Court, E.D. Pennsylvania.

Feb. 11, 2002.

Arthur W. Lefeco, Victor M. Verbeke, Andrew B. Clauss, Kristine M. Maciolek, Cozen and O'Connor, Philadelphia, PA, Jeffrey A. Goldwater, John J. Freeman, Edward F. Ruberry, Brian G. Schumann, Bollinger, Ruberry and Garvey, Chicago, IL, Steven J. Polansky, Spector, Gadon & Rosen, Philadelphia, PA, Dennis Dolan, Chicago, IL, Mark F. Wolfe, Chicago, IL, for Plaintiff.

Ronald F. Kidd, Philadelphia, PA, Thomas D. Schneider, Philadelphia, PA, for Law Offices of Carole F. Kafrissen, P.C., Defendant.

Alexander B. Giacobetti, Harry J. Levant, Law Offices of Alexander B. Giacobetti, Philadelphia, PA, for Cynthia Clark, Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

The issue before the court is whether under Pennsylvania law the attorney-client privilege protects communications from the client to the lawyer only, or whether it extends also to communications from the lawyer to the client, even though disclosure of the communications from the lawyer to the client will not reveal the client's communications to the lawyer.

### I

The instant case involves an action by an insured against her insurer for bad faith in the prosecution and denial of certain insurance benefits under a professional insurance liabilities policy. The defendant, a lawyer, was sued by a client for malpractice. The underlying case was settled by the insurer with the lawyer's client. It is the circumstances of the settlement, the particulars of which are not relevant for the purposes of the instant matter, which

give rise to the lawyer's claim for bad faith presently before the court.

During discovery in the bad faith litigation, the lawyer requested, inter alia, production of the claims file. Coregis, the plaintiff and the insurer herein, produced a number of documents, but objected to the production of one document prepared by a claims representative, as well as five documents referenced in that memorandum, on the basis that the six documents were cloaked with the protection of the doctrine of work product or the attorney-client privilege. It is these six documents that are at issue before the court.

The parties' initial submissions on the issue treated the work product doctrine and the attorney-client privilege interchangeably as either applying or not applying to all six documents. The court, after an in camera review, determined that four of the documents were not protected by the work product doctrine and ordered their production. The court also determined that the remaining two documents, communications between outside counsel and Coregis, were potentially entitled to the protection of the attorney-client privilege. However, the court found that under Pennsylvania law the attorney-client privilege applied only to communications by the client to the lawyer, and communications from the lawyer to the client were protected only to the extent that disclosure would reveal communications of the client to the attorney. The court thus ordered the two documents to be submitted to the court in camera, together with Coregis' proposed redactions of those portions of the communications from the lawyer to the client which Coregis believed, that if disclosed, would reveal the client's communications. Without producing the four documents ordered produced to the defendant, nor producing the two remaining documents for in camera inspection, Coregis took an appeal to the Third Circuit.[1]

---

1. To the extent that the issues raised by the    parties in this motion impact the collateral

Defendant has now moved the court to have the court declare the appeal frivolous, order production of the documents forthwith, and proceed to trial, or, in the alternative, to stay the trial until the Third Circuit reaches the issue of the applicability of the work product doctrine and the attorney-client privilege to the requested documents. Coregis opposes the motion and for the first time argues that under the Third Circuit's authority of *In re Ford Motor Co.*, 110 F.3d 954 (3d Cir.1997), the previous decision of the court ordering in camera production of the two documents as to which Coregis claims attorney-client privilege was incorrect, and that no in camera inspection is needed since all communications contained in the documents are privileged without further inquiry.

## II

### A.

Under Federal Rule of Evidence 501, a federal court sitting in a diversity must look to state law for the applicable legal rule on issues of privilege. *See* Fed. R.Evid. 501; *United Coal Co. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988). The Pennsylvania rule on attorney-client privilege has been codified for nearly 125 years. *See* 1976 Pa.Laws 586, No. 142, § 2; 1887 Pa.Laws 158, No. 89, § 5(d). The statute in its current form provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928.

By its very terms, the statute cloaks with privilege communications from the client to the attorney but does not extend an equal and full protection to those communications flowing from the lawyer to the client. The apparent one-sidedness of the Pennsylvania statute on attorney-client privilege is not a matter of whim or oversight, but rather it is based on sound policy judgments. As the Pennsylvania Supreme Court explained:

> The purpose and necessities of the relation between a client and his attorney require, in many cases, on the part of the client, the fullest and freest disclosures to the attorney of the client's objects, motives and acts. This disclosure is made in the strictest confidence, relying upon the attorney's honor and fidelity. To permit the attorney to reveal to others what is disclosed, would be not only a gross violation of a sacred trust upon his part, but would utterly destroy and prevent the usefulness and benefit to be derived from professional assistance. Based upon considerations of public policy, therefore, the law wisely declares that all confidential communications and disclosures, made by a client to his legal advisor for the purpose of obtaining his professional aid or advice, shall be strictly privileged; —that the attorney shall not be permitted, without the consent of his client,—and much less will he be compelled—to reveal or disclose communications made to him under such circumstances.

*Slater v. Rimar, Inc.*, 462 Pa. 138, 148, 338 A.2d 584, 589 (1975) (quoting 2 Mecham on Agency, 2d Ed., § 2297). *See also Commonwealth v. Maguigan*, 511 Pa. 112, 125, 511 A.2d 1327, 1333–34 (1986) (same).[2]

---

appeal currently pending before the Third Circuit in this case, this memorandum may also be considered under 3rd Cir. LAR 3.1 (1997).

**2.** In *National Bank of West Grove v. Earle*, 196 Pa. 217, 221, 46 A. 268, 269 (1900), the Penn-

sylvania Supreme Court did reject a bill of discovery to compel counsel to disclose advice given to his clients. The court determined that the defendants had a complete defense to the bill of discovery, including communications from the attorney to the client. Although the predecessor to § 5928 was already

Thus, it is clear that the Pennsylvania rule is intended to foster free and full communications from the client to the attorney and to enjoin the attorney from subsequent unauthorized disclosure of the communication. *See Birth Center v. St. Paul Cos., Inc.,* 1999 Pa.Super. 49, 727 A.2d 1144, 1164 (1999) (noting that the attorney-client privilege "only bars discovery or testimony regarding confidential communications made by the client during the course of representation"); *Brennan v. Brennan,* 281 Pa.Super. 362, 371, 422 A.2d 510, 514 (1980) (citing *Slater*).

### B.

■ Over the years, it is clear that the line drawn by the statute between protecting communications from the client to the attorney but not from the attorney to the client has been more "nice" than "bright". When applying the statute to claims that the privilege also applies to communications from the attorney to the client, Pennsylvania courts have developed a corollary extending the privilege of the statute to the communications from the attorney to

the client that, if disclosed, would necessarily reveal the confidences made to him by the client.[3] *See, e.g., Reusswig v. Erie Ins.,* 49 Pa. D. & C.4th 338, 350–51 (2000); *Lane v. Hartford Accident and Indem. Co.,* 5 Pa. D. & C.4th 32, 42 (1990); *MacQuown v. Dean Witter Reynolds, Inc.,* 47 Pa. D. & C.3d 21, 23–24 (1987); *City of Shamokin v. West End Nat'l Bank,* 22 Pa. D. & C.3d 232, 234–36 (1982); *Northampton Borough Mun. Auth. v. Remsco Assoc., Inc.,* 22 Pa. D. & C.3d 541, 550 (1981); *Claster v. Citizens Gen. Hosp.,* 14 Pa. D. & C.3d 243, 249 (1980); *Trzesniowski v. Erie Ins. Exch.,* 59 Pa. D. & C.2d 44, 47 (1973); *Nelson v. Himes,* 62 Pa. D. & C.2d 748, 749 (1973); *Eisenman v. Hornberger,* 44 Pa. D. & C.2d 128, 129 (1967). *See also In re Tire Workers Asbestos Litig.,* 125 F.R.D. 617, 621 (E.D.Pa.1989); *Congoleum Inds., Inc. v. GAF Corp.,* 49 F.R.D. 82, 85–86 (E.D.Pa.1969). *But see Commonwealth v. Brown,* 116 Pa.Super. 1, 20–21, 174 A. 748, 756 (1934); *Messner v. Korbonits,* 39 Pa. D. & C.3d 182, 185 (1982); *Emejota Eng'g Corp. v. Kent Polymers Inc.,* Civ. A. No. 80–3523, 1985 WL 4019, **1–2, 1985

on the books, the Pennsylvania Supreme Court did not cite to it and did not purport to interpret the statute. Since then, the case has been cited by only two Pennsylvania trial courts, *Northampton Borough Mun. Auth. v. Remsco Assoc.,* 22 Pa. D & C.3d 541, 550 (1981); *Willis v. Pennsylvania Millers Mut. Ins. Co.,* 14 Pa. D. & C.3d 705, 707 (1980), and one unpublished decision of the United States District Court for the Eastern District of Pennsylvania, *Emejota Eng'g Corp. v. Kent Polymers, Inc.,* Civ. A. No. 80–3523, 1985 WL 4019, **1–2, 1985 U.S. Dist. LEXIS 13415, at *5–6 (E.D.Pa. Nov.27, 1985). In fact, the court in *Northampton* read the case for the proposition that "application of the privilege seems to only be applicable where the very purpose of the privilege would be contravened by disclosure." 22 Pa. D. & C.3d at 550. Given that the Pennsylvania Supreme Court has never cited to *Earle* in the past 110 years, although having repeated opportunity to do so, and that the legislature in 1976 re-enacted the original attorney-client privilege

statute, which is plainly at odds with *Earle,* the court concludes that *Earle* was either overruled by the legislature directly or by the Pennsylvania Supreme Court sub silentio.

**3.** In *United States v. Amerada Hess Corp.,* 619 F.2d 980, 985–86 (3d Cir.1980), the Third Circuit determined that in a case involving the enforcement of two Internal Revenue Service summons under 26 U.S.C. §§ 7402(b) and 7604(a), the district court had erred in ruling that the attorney client privilege was inapplicable to communications from the attorney to the client. The court determined that "[l]egal advice or opinion from an attorney to his client, individual or corporate, has consistently been held by the federal courts to be within the protection of the attorney-client privilege." *Id.* at 986. Pursuant to Federal Rule of Evidence 501, in diversity actions, state law governs matters of privilege. Thus, the holding in *Hess,* which is pursuant to federal law, is inapplicable to diversity matter pursuant to state law of privilege.

U.S. Dist. LEXIS 13415, at \*5–6 (E.D.Pa. Nov.27, 1985).

The genesis of this corollary is the court's decision in *Eisenman v. Hornberger*, 44 Pa. D. & C.2d 128, 129 ·(Pa.Com.Pl. 1967). There, the plaintiff had requested production in discovery of an opinion produced by an insurance company's counsel concerning the defendant's contractual responsibilities. *See id.* In addressing whether the defendant was required to produce the opinion, the court began with the plain language of the Pennsylvania attorney-client statute, as enacted May 23, 1887. *See id.* The court determined that "the cited statute clearly relates to communications by client to counsel, not to communications by counsel to client." *Id.* The court, however, then determined that it was probable that the communication in question "either reiterates or sets forth the gist of a prior communication from the client." *Id.* Accordingly, in an effort to protect that prior communication, which was privileged and could not be revealed by the attorney, the court rejected the plaintiff's attempts to obtain the document. *See id.* Though protecting the document itself, the court did not, however, protect the counsel's advice to the client. *See id.* The court ordered the defendant to state whether its counsel advised the defendant of its contractual duties, and, most importantly, "what advice was given by counsel to garnishee." *Id.* Thus, the court determined that no privilege attached to the advice of counsel, but only to the document that would reveal confidential communications by the client.

This judicially developed corollary to the attorney-client privilege under the Pennsylvania statute finds support in the observations of Professor Wigmore on communications made by the attorney to the client. *See City of Shamokin*, 22 Pa. D. & C.3d at 234. Professor Wigmore suggests that the privilege protects both communications from an attorney to a client; the reason for doing so is not to encourage full discussions on the part of the attorney, but to protect the confidential statements of the client:

That the attorney's communications to the client are also within the privilege was always assumed in the earlier cases and has seldom been brought into question. The reason for it is not any design of securing the attorney's freedom of expression, but the necessity of preventing the use of his statements as admissions of the client, or as leading to inferences of the tenor of the client's communications—although in this latter aspect, being hearsay statements, they could seldom be available at all.

8 Wigmore § 2320 (1961). A Pennsylvania lower court in *City of Shamokin* cited Professor Wigmore approvingly, and suggested that although the statute refers only to communications from the client to the attorney, the privilege must be extended to protect communications made by the attorney. 22 Pa. D. & C.3d at 234. In order to effectuate the purpose of assuring the client of confidentiality and fostering an open dialogue, the statute "must encompass all confidential professional communications from the attorney to the client, to the extent that such communication is based on confidential facts disclosed to the attorney from the client." *Id.*

In sum, review of the Pennsylvania authorities discloses a well-developed rule grounded in a statute and consistently enforced by the courts which cloaks in privilege communications from the client to the attorney. The rule is intended to protect the disclosure of confidential communications made by the client. A corollary to the rule, crafted by Pennsylvania courts, cloaks communications from the attorney to the client with privilege if disclosure of the communication would reveal the com-

munications from the client to the attorney.

## C.

Coregis challenges this rule and argues that the Third Circuit in *In re Ford Motor Co.*, held that under Pennsylvania law communications from the attorney to the client were privileged without reference to whether or not disclosure of the communication would reveal client confidences. Coregis contends that since all communications between lawyer and client are protected, and it is uncontested that the documents at issue included communications from the attorney to the client, the court's directive to review the documents in camera is legally pointless.

*In re Ford Motor Co.* involved a collateral order appeal from a decision of the district court ordering disclosure of the minutes of a meeting of a committee of the board of directors. 110 F.3d at 957. The minutes contained communications from the board members to the lawyer and from the lawyer to the board members. *See id.* The court of appeals noted that "primarily at issue is whether the communications memorialized by the minutes were made for the purpose of obtaining legal advice." *Id.* at 964–65. The district court found that the communications memorialized in the minutes contained factual information and were not made for the purpose of securing legal advice from the lawyer. *See id.* at 966. The court of appeals reversed, finding that the communications contained in the minutes involved not only factual materials but also legal opinions. *See id.* The court noted that although the decision reached by the committee (i.e., the client) at the meeting (and recorded in the minutes) may have been driven by the client's concerns for "profit and loss, economics, marketing, public relations, or the like, it was infused with legal concerns, and was [also] reached only after securing legal advice." *Id.* The Third Circuit held that

the communications thus were made in the course of the client seeking legal advice from the lawyer and that, therefore, the communications were protected by the attorney-client privilege. *See id.*

*In re Ford Motor Co.* does not compel the result argued by Coregis. One, to the extent that the Third Circuit held that the communications in *In re Ford Motor Co.* were made for the purpose of seeking legal advice, this teaching is not relevant here because that issue is not in question. Two, to the extent that the Third Circuit, at least impliedly, found that disclosure of the lawyer's advice would necessarily reveal the client's communication to the lawyer, this holding is consistent with Pennsylvania law and not helpful to Coregis.

Coregis underscores its argument by pointing favorably to the Third Circuit's comments in footnote nine:

> It should be noted that the law makes no distinction between communications made by a client and those made by an attorney, provided the communications are for the purpose of securing legal advice. *See* Restatement of the Law Governing Lawyers § § 118, 120 (Proposed Final Draft No. 1 1996). In other words, the entire discussion between a client and an attorney undertaken to secure legal advice is privileged, no matter whether the client or the attorney is speaking.

*In re Ford Motor Co.*, 110 F.3d at 965 n. 9.

Thus, the question relevant to this case is whether the purported teaching of footnote nine, i.e. the attorney-client privilege applies to *all* communications between the lawyer and the client exchanged in the course of seeking legal advice, is controlling in this case and, therefore, in camera review is not necessary.

First, it is problematic to determine whether the court of appeals was merely

stating a general proposition or applying state substantive law in footnote nine. There are no citations in footnote nine to either Pennsylvania or Michigan law, the two jurisdictions whose interests were implicated in that case, and the footnote is supported only by a general reference to a draft of the Restatement of the Law Governing Lawyers. Based on the language of footnote nine, the court can not conclude that the Third Circuit was making a statement as to the scope of the attorney-client privilege under Pennsylvania law.

Second, even if the Third Circuit was seeking to apply Pennsylvania law, it appears that the comments in the footnote are dicta. That this court is bound by the common law of precedent, or stare decisis, is "so central to Anglo–American jurisprudence that it scarcely need be mentioned." *Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965, 969 (3d Cir.1979) (Aldisert, J.). Stare decisis means that courts will "abide by, or adhere to, decided cases." Black's Law Dictionary 1406 (6th Ed.1990). The principle provides that precedents "set by higher courts are conclusive on the lower courts, and leave the latter no scope for independent judgment or decision." *Allegheny Gen. Hosp.*, 608 F.2d at 970 (quoting H.C. Black, Law of the Judicial Proceedings 10 (1912)).

Though stare decisis is fundamental to our jurisprudence, and the governing power of precedent is absolute, not every ru-mination of a higher court is to be awarded equal weight by a lower court. The doctrine of stare decisis focuses on the decision of the court and the rule the decision adopts. *See* Ruggero J. Aldisert, *Precedent: What It Is and What It Isn't; When Do We Kiss It and When Do We Kill It*, 17 Pepp. L.Rev. 605 (1990). "[A] case is important only for what it decides: for 'the what,' not for 'the why,' and not for 'the how.' It is important only for the decision, for the detailed legal consequence following a detailed set of facts." *Id.* As Judge Aldisert concludes, "stare decisis means what the court did, not what it said." *Id.* "Gratuitous statements ... bind neither trial courts nor subsequent panels of this court." *Chowdhury v. Reading Hosp. and Med. Ctr.*, 677 F.2d 317, 324 (3d Cir.1982) (Aldisert, J., dissenting). *See also ACLU v. Schundler*, 168 F.3d 92, 98 n. 6 (3d Cir.1999) (stating that "the holding of a panel in a reported opinion is binding on subsequent panels" and that the court has "repeatedly held that dicta are not binding"). Dicta, then, are "statements of law in the opinion which could not logically be a major premise of the selected facts of the decision ... Dictum is the antithesis of precedent." *Id.*[4]

In *In re Ford Motor Co.*, the court enunciated its formulated rule—that the privilege extends to factual communications disclosed by the client to the attorney that, although motivated by business con-

---

4. The Third Circuit suggests that stare decisis extends beyond merely what the court "did", particularly when analyzing statements contained in decisions of the Supreme Court. In *Planned Parenthood v. Casey*, 947 F.2d 682, 692 (3d Cir.1991) aff'd. in part and rev'd in part, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (citing Note, The Precedential Value of Supreme Court Plurality Decisions, 80 Colum. L.Rev. 756, 757 n.7 (1980)), the Third Circuit noted that "[o]ur system of precedent or stare decisis is thus based on adherence to both the reasoning and

result of a case, and not simply to the result alone." Indeed, both the legal standard or the applicable test and the actual application of that standard to the facts of the case are binding. *See id.* at 691. In the context of Supreme Court decisions, such a rule is required; if it were not, the Supreme Court's "limited docket" would limit the Court's authority only to the "handful of cases that reached it." *Id. See also United States v. Powell*, 109 F.Supp.2d 381, 384 (E.D.Pa. 2000).

cerns, were made for the purpose of seeking legal advice—and applied that rule to the facts of that case, creating the holding of the case which binds the court. The court of appeals' reflections contained in footnote nine on the general applicability of the privilege to all communications from the attorney to the client, whether or not disclosure would reveal confidential communications from the client to the lawyer, however, does not contribute to that holding and may be considered dicta.

Yet, because the guidance of a higher court comes in the form of dicta, it does not mean that lower courts should reject its teaching or ignore it lightly. Dictum from higher courts is entitled to deference by inferior courts and should not be disregarded except for good cause. The court believes that this is such a case. To follow the Third Circuit's dictum in footnote nine would place the court on a collision course with a well developed and consistently applied Pennsylvania rule on attorney-client privilege. Under these circumstances, and with the greatest respect, the court declines to take Pennsylvania law on attorney-client privilege to where neither the Pennsylvania legislature nor the Pennsylvania Supreme Court authorizes this court to go.[5] Under these circumstances, the court concludes that production in camera is required in order to ascertain whether the communications from the attorney to the client are protected by the privilege.

### III

■ The insured also contends that where a party files an appeal under the collateral order doctrine, as Coregis has done here, the court has the authority to find that the appeal is frivolous and to proceed to trial while the appeal is pending. *See Death Row Prisoners of Pennsylvania v. Ridge*, 948 F.Supp. 1282, 1285–86 (E.D.Pa.1996) (hereinafter *"Death Penalty Cases"*). Generally, filing a timely notice of appeal divests the district court of any further authority over those aspects of the case on appeal. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). However, in the event that the appeal is taken from a non-final order, then there is an exception to this principle of transferring jurisdiction. *See Death Penalty Cases*, 948 F.Supp. at 1285. Under this exception, if the district court rules on a matter that is a "collateral order" and if the claim underlying the collateral order is frivolous, then the attempted appeal will not divest the district court of its jurisdiction. *See id.* The Third Circuit in *United States v. Leppo*, 634 F.2d 101, 105 (3d Cir.1980), held "that an appeal from a denial of a double jeopardy motion does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous and supported its conclusions by written findings."

■ In this case, Coregis appeals the court's decision requiring production to an adverse party and in camera inspection of documents it claims are protected by the attorney-client privilege and the work product doctrine. As the Third Circuit

---

**5.** If indeed the Third Circuit intended to direct lower courts to follow the path set forth in footnote nine, the court respectfully suggests a change of course. *See Carver v. Foerster*, 102 F.3d 96, 106 (3d Cir.1996) (Becker, J., concurring) (noting that an inferior court may express its opinion when it feels that a higher court "has gone down a dangerous path it ought to reconsider") (citing *United* *States v. Kennerley*, 209 F. 119, 120 (S.D.N.Y. 1913) (Hand, J.) ("While, therefore, the demurrer must be overruled, I hope it is not improper for me to say that the rule as laid down, however consonant it may be with mid-Victorian morals, does not seem to me to answer to the understanding and morality of the present time.")).

has noted, in the attorney-client or work product context, "once putatively protected material is disclosed, the very 'right sought to be protected' has been destroyed." *In re Ford Motor Co.,* 110 F.3d 954, 963 (3d Cir.1997) (citing *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 591 (3d Cir.1984)). Declaring an appeal frivolous and compelling the disclosure of the documents in spite of Coregis' appeal, would, as *In re Ford Motor Co.* suggests, "allow the very disclosure against which those rules protect." *Id.*

Moreover, the appeal is not frivolous on its face. "A matter is not frivolous if any of the legal points are arguable on their merits." *Dreibelbis v. Marks,* 675 F.2d 579, 580 (3d Cir.1982). As aforesaid, based on a footnote in *In re Ford Motor Co.,* 110 F.3d at 965 n. 9, and under Coregis' interpretation, the court's prior decision concerning the attorney-client privilege was legally incorrect. Under these conditions, the court will not find the appeal frivolous or proceed to trial while the appeal is pending.

## IV

Based on the above stated reasons, the court finds that under the Pennsylvania rule governing the attorney-client privilege, communications from a client to an attorney are protected, and that the corollary to that rule protects communications from an attorney to a client to the extent that the communication would reveal client confidences. Therefore, an in camera review of the documents authored by outside counsel and delivered to Coregis is required in order to determine whether the privilege protects the documents from disclosure. Finally, the appeal is not frivolous and will not be dismissed. Trial is stayed until further order.

An appropriate order follows.

*ORDER*

**AND NOW**, this **11th** day of **February, 2002**, upon consideration of defendants' motion to declare plaintiff's appeal frivolous, or, in the alternative, to stay trial (doc. no. 130), and for the reasons stated in the court's memorandum dated February 8, 2002, it is hereby **ORDERED** that the defendant's motion is **GRANTED IN PART AND DENIED IN PART.**

It is **FURTHER ORDERED** that trial is **STAYED** until further order of the court.

**AND IT IS SO ORDERED.**