15 A.3d 44

**William GILLARD, Appellee**

**v.**

**AIG INSURANCE COMPANY and AIG and The Insurance Company of the State of Pennsylvania and Key Auto Insurance Plan and AIG Claims Services, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 2010.

Decided Feb. 23, 2011.

66

David J. Rosenberg, Weber, Gallagher, Simpson, Stapleton, Fires & Newby, L.L.P., Pittsburgh, for AIG Insurance Company and AIG and The Insurance Company of The State of Pa., et al.

Robert L. Byer, Pittsburgh, Robert McCarthy Palumbos, Christina E. Norland Audigier, Duane Morris, L.L.P., Thomas G. Wilkinson Jr., Cozen O'Connor, Philadelphia, William L. Stang, Fox Rothachild, L.L.P., Pittsburgh, for Amicus Curiae Allegheny County Bar Association.

Robert L. Byer, Pittsburgh, Robert McCarthy Palumbos, Christina E. Norland Audigier, Philadelphia, Duane Morris, L.L.P., Susan Hackett, for Amicus Curiae Association of Corporate Counsel.

Robert L. Byer, Pittsburgh, Robert McCarthy Palumbos, Christina E. Norland Audigier, Philadelphia, Duane Morris, L.L.P., Robin S. Conrad, Amar D. Sarwal, for Amicus Curiae Chamber of Commerce of the United States of America.

David R. Fine, John P. Krill Jr., K&L Gates, L.L.P., Harrisburg, for Amicus Curiae Energy Association of Pennsylvania.

Robert L. Byer, Pittsburgh, Robert McCarthy Palumbos, Christina E. Norland Audigier, Duane Morris, L.L.P., Thomas G. Wilkinson Jr., Cozen O'Connor, Philadelphia, for Amicus Curiae Pennsylvania Bar Association.

Robert L. Byer, Pittsburgh, Robert McCarthy Palumbos, Christina E. Norland Audigier, Duane Morris, L.L.P., Thomas G. Wilkinson Jr., Cozen O'Connor, Scott F. Cooper, Blank Rome LLP, Philadelphia, for Amicus Curiae Philadelphia Bar Association.

Robert E. Kelly Jr., Kelly, Parker & Cohen, L.L.P., Anthony W. Parker, Harrisburg, for Amicus Curiae The American Insurance Assoc., et al.

Matthew A. Moroney, Goldberg, Miller & Rubin, P.C., Claire Neiger, Philadelphia, Michael T. Sosnowicz, Michael T. Sosnowicz & Associates, P.C., Darby, for William Gillard.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

*OPINION*

Justice SAYLOR.

In this appeal, we consider whether, and to what degree, the attorney-client privilege attaches to attorney-to-client communications.

This litigation entails a claim of bad faith arising out of insurance companies' handling of Appellee's uninsured motorist claim. During discovery, Appellee sought production of all documents from the file of the law firm representing the insurers in the underlying litigation (who are the appellants here). Appellants withheld and redacted documents created by counsel, asserting the attorney-client privilege.

In response, Appellee sought to compel production. Appellee took the position that the attorney-client privilege in Pennsylvania is very limited—according to Section 5928 of the Judicial Code—to confidential communications initiated by the client:

**5928. Confidential communications to attorney**

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S. § 5928.

Appellee's motion allowed, in the abstract, that certain lawyer-initiated communications might contain information originating with the client and, accordingly, may be privileged. Appellee observed, however, that Appellants had not sought such derivative protection, but rather, asserted the privilege broadly, as if it were a "two-way street." Appellee maintained that the privilege is, in fact, a "one-way street" and must be strictly contained to effectuate the will of the General Assembly and minimize interference with the truth-determining process. As further support, Appellee referenced *Birth Center v. St. Paul Cos., Inc.*, 727 A.2d 1144, 1164 (Pa.Super.1999) ("The attorney-client privilege ... only bars discovery or testimony

regarding confidential communications made by the client during the course of representation.").

■ For their part, Appellants highlighted the privilege's purpose to foster the free and open exchange of relevant information between the lawyer and his client.[1] To encourage such candid disclosure, Appellants reasoned, both client- and attorney-initiated communications must enjoy protection. In this regard, Appellants referenced *Maiden Creek T.V. Appliance, Inc. v. General Casualty Insurance Co.*, No. Civ.A. 05–667, 2005 WL 1712304, at *2 (E.D.Pa. July 21, 2005) ("The attorney-client privilege protects disclosure of professional advice by an attorney to a client or of communications by a client to an attorney to enable the attorney to render sound professional advice." (citing *Upjohn*, 449 U.S. at 390, 101 S.Ct. at 683)). Appellants also stressed, that, under caselaw prevailing in the bad-faith litigation arena, a carrier asserting an advice-of-counsel defense waives the attorney-client privilege relative to such advice. *See, e.g., Mueller v. Nationwide Mut. Ins. Co.*, 31 Pa. D. & C.4th 23, 32–33 (C.P.Allegheny, 1996) (Wettick, J.). According to Appellants, such a waiver would

---

1. *Accord Jaffee v. Redmond*, 518 U.S. 1, 10, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337 (1996) (explaining the privilege is "rooted in the imperative need for confidence and trust" (citation and quotation marks omitted)); *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) ("Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."); *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888) (relating that professional "assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."); *In re Search Warrant B–21778*, 513 Pa. 429, 441, 521 A.2d 422, 428 (1987) ("Its necessity obtains in the objective of promoting the most open disclosure in order to enhance the attorney's effectiveness in protecting and advancing his client's interests."); *Alexander v. Queen*, 253 Pa. 195, 202, 97 A. 1063, 1065 (1916) ("Without such a privilege the confidence between client and advocate, so essential to the administration of justice would be at an end."); Pa.R.P.C. 1.6 cmt. [2] (2008) (observing that the "fundamental principle" that communications between lawyers and clients are confidential contributes to the "trust that is the hallmark of the client-lawyer relationship"). *See generally* Restatement (Third) of the Law Governing Lawyers § 68 cmt. c (2000) (stating that the privilege "enhances the value of client-lawyer communications and hence the efficacy of legal services").

be superfluous were the advice of counsel discoverable from the outset.

During *in camera* review proceedings in the presence of counsel, the common pleas court adopted the "one-way street" perspective. *See* N.T., Mar. 29, 2007, at 8 ("According to the Pennsylvania statute, the attorney-client protection only applies to communications made by the client. That's my ruling."). Further, as reflected in the following interchange with defense counsel, the court repeatedly grounded its ruling on the direction of the flow of the information, not the content, suggesting that derivative protection was absent:

[Defense Counsel]: I think with that ruling, Your Honor, then that would obviate the need to go through a number of documents that are communications from attorney to client, because as I understand the ruling, is that those communications are, pursuant to the Court's ruling, not going to be within the scope of the attorney-client privilege.

THE COURT: Exactly.

*Id.* at 8–9. Additionally, the common pleas court couched its ruling as a "blanket" one. *Id.* 27.

In its opinion under Rule of Appellate Procedure 1925, the court referenced the following decisions as supportive of its ruling: *Slater v. Rimar, Inc.*, 462 Pa. 138, 148, 338 A.2d 584, 589 (1975) ("[T]he law wisely declares that all confidential communications and disclosures, made by a client to his legal adviser for the purpose of obtaining his professional aid or advice, shall be strictly privileged[.]" (citation and quotation marks omitted)); *Commonwealth v. Maguigan*, 511 Pa. 112, 131, 511 A.2d 1327, 1337 (1986) (describing the attorney-client privilege in the context of the criminal law, *see* 42 Pa.C.S. § 5916, as "limited to confidential communications and disclosures made by the client to his legal advisor"); and *In re Estate of Wood*, 818 A.2d 568, 571 (Pa.Super.2003) ("[T]he privilege applies only to confidential communications made by the client to the attorney[.]"). The court, however, appeared to moderate its focus on the direction of flow and to accept the possibility of some derivative protection. Nevertheless, it

explained that Appellants had not argued that the withheld attorney communications contained information originating with the client.

Appellants filed an interlocutory appeal, invoking the collateral order doctrine. *See* Pa.R.A.P. 313; *Ben v. Schwartz*, 556 Pa. 475, 483–85, 729 A.2d 547, 551–52 (1999). The Superior Court exercised jurisdiction and affirmed in a brief memorandum opinion, relying on *Nationwide Mutual Insurance Co. v. Fleming*, 924 A.2d 1259, 1269 (Pa.Super.2007) (holding that "protection is available *only* for confidential communications made *by the client* to counsel" (emphasis in original)), *aff'd on other grounds by an equally divided court*, 605 Pa. 468, 992 A.2d 65 (2010). Consistent with *Fleming*, the *Gillard* panel treated the privilege as being "strictly limited." *See Gillard v. AIG Ins. Co.*, No. 1065 EDA 2007, *slip op.* at 4, 947 A.2d 836 (Pa.Super. Jan. 4, 2008).

Like Appellee, the Superior Court did recognize *Fleming's* allowance for some derivative protection of attorney-to-client communications. *See id.* at 5–6 ("*Fleming* makes it clear that communications from an attorney to a client are protected ... under Section 5928, but *only* to the extent that they reveal confidential communications previously made by the client to counsel for the purpose of obtaining legal advice." (quotation marks omitted and emphasis in original)). Nevertheless, the panel discerned no specific claim that the sought-after documents would disclose confidential communications made by Appellants to their attorneys. Thus, it held, the privilege did not apply. *See id.* at 6.

After the Superior Court entered its opinion in *Gillard*, this Court addressed *Fleming* in an equally divided opinion. *See Fleming*, 605 Pa. at 469, 992 A.2d at 65.

Central to the argument of the *Fleming* appellants (also insurance companies) was that, in *National Bank of West Grove v. Earle*, 196 Pa. 217, 46 A. 268 (1900), this Court determined the privilege did apply to the advice of counsel. *Earle* explained that,

[i]f it [did] not, then a man about to become involved in complicated business affairs, whereby he would incur grave responsibilities, should run away from a lawyer rather than consult him. If the secrets of the professional relation can be extorted from counsel in open court, by the antagonist of his client, the client will exercise common prudence by avoiding counsel.

*Id.* at 221, 46 A. at 269. The *Fleming* appellants stressed that the statutory prescription for the privilege already was in place, via a predecessor statute, at the time of *Earle's* issuance. *See* 42 Pa.C.S. § 5928, Official Comment (explaining the statute is "[s]ubstantially a reenactment of act of May 23, 1887 (P.L. 158) (No. 89), § 5(d) (28 P.S. § 321)").

The lead opinion in *Fleming* did not resolve the facial tension between *Earle's* broad perspective on the privilege and the statute's narrower focus. Rather, the lead Justices found the appellants had waived the attorney-client privilege by producing documents reflecting the same subject matter as the withheld documents. *See Fleming*, 605 Pa. at 475–477, 992 A.2d at 69–70 (opinion in support of affirmance).

The opinion supporting reversal differed with this finding of waiver. Furthermore, and as relevant here, the Justices favoring reversal also took a broader approach to the attorney-client privilege than that of the Superior Court. The opinion expressed agreement with *amici* that a "narrow approach to the attorney-client privilege rigidly centered on the identification of specific client communications" was unworkable, "in that attorney advice and client input are often inextricably intermixed." *Id.* at 479, 992 A.2d at 71 (opinion in support of reversal). The Justices supporting this opinion also reasoned that allowing for derivative protection but closely limiting its scope would lead to uncertainty and undue precaution in lawyer-client discussions, rather than fostering the desired frankness. Their opinion concluded:

While [we] acknowledge that the core concern underlying the attorney-client privilege is the protection of client communications, due to the unavoidable intertwining of such communication and responsive advice, [we] would remain

with the pragmatic approach reflected in [*Earle* ]. Although this may inevitably extend some degree of overprotection, [we] find it to be consistent with the policies underlying the privilege and the relevant legislative direction, particularly in light of the principle of statutory construction pertaining to legislative enactments. *See* 1 Pa.C.S. § 1922 ("[W]hen a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language."). Moreover, the approach is consistent with that of a majority of jurisdictions, *accord* Restatement (Third) of the Law Governing Lawyers §§ 68–70 & § 69 cmt. i (2000), which yields greater consistency for the many corporations doing interstate business. [We] recognize that this Court has issued a few decisions in tension with *Earle;* however, none has entailed a deeper reassessment of the attorney-client privilege in Pennsylvania, as this case was selected to achieve.

*Id.* at 482–483, 992 A.2d at 73–74 (footnotes omitted); *cf. Alexander,* 253 Pa. at 203, 97 A. at 1065 ("The general rule is, that all professional communications are sacred." (citation and quotation marks omitted)).

In the aftermath of the divided *Fleming* decision, this appeal was selected to determine the appropriate scope of the attorney-client privilege in Pennsylvania.

Appellants couch the threshold issue as "whether communications from an attorney to the client may *ever* enjoy protection from disclosure as an attorney-client communication." Brief for Appellants at 7 (emphasis in original). They acknowledge the particular terms of the statute protecting confidential *client* communications, but they assert the provision was not intended to change or limit the essential nature of the common law governing confidential lawyer-to-client communications. *Cf.* 8 WIGMORE, EVIDENCE § 2320 (McNaughton rev. 1961) ("That the *attorney's communications to the client* are also within the privilege was always assumed in the earlier cases and has seldom been brought into question." (emphasis in original)); *accord* 81 AM.JUR.2D *Witnesses* § 357 (2010). Moreover, according to Appellants, *Earle* interpreted and

clarified the confidential-communications statute, validating the position that attorney advice is within the scope of the protection. In this regard, Appellants recognize that *Earle* made no specific reference to the statute, but their position is that it should be presumed the decision was interpretive in nature.[2] They also advance a presumption that, when the General Assembly substantially reenacted the language in Section 5928 of the Judicial Code, its intention was to incorporate *Earle,* consistent with Section 1922(4) of the Judicial Code, 1 Pa.C.S. § 1922(4).[3]

Throughout their brief, Appellants stress the historical acceptance of the privilege, *see, e.g., Commonwealth v. Chmiel,* 558 Pa. 478, 493, 738 A.2d 406, 414 (1999) ("Although now embodied in statute, the attorney-client privilege is deeply rooted in the common law. Indeed, it is the most revered of the common law privileges." (citations omitted)), as well as the underlying policy justifications, *see supra* note 1.[4] Appellants maintain that a close confinement to client-initiated communi-

**2.** Similar positions regarding the common law and *Earle* are advanced in joint *amicus* briefs supporting Appellants filed on behalf of: the Association of Corporate Counsel, Pennsylvania Bar Association, Philadelphia Bar Association, Allegheny County Bar Association, and Chamber of Commerce of the United States of America; the American Insurance Association, Pennsylvania Defense Institute, Insurance Federation of Pennsylvania, Inc., and Philadelphia Association of Defense Counsel; as well as in a separate, supportive *amicus* brief submitted by Energy Association of Pennsylvania.

**3.** *Accord Cohen v. Jenkintown Cab Co.,* 238 Pa.Super. 456, 462 n. 2, 357 A.2d 689, 692 n. 2 (1976) (noting that the original statute "has been treated as a restatement of the principle of attorney-client privilege as it existed at common law."); Brief for *Amici* Ass'n of Corporate Counsel, *et al.* at 14 ("The [*Earle* ] opinion evidences this Court's contemporaneous understanding that, by enacting the predecessor to § 5928, the General Assembly did not intend to alter the 'seldom questioned' common law view that communications from an attorney to a client for the provision of legal advice are privileged.").

**4.** In a recent resolution, the American Bar Association encapsulated such purposes as follows:

RESOLVED, that the American Bar Association strongly supports the preservation of the attorney-client privilege and work product doctrine as essential to maintaining the confidential relationship between client and attorney required to encourage clients to discuss their legal matters fully and candidly with their counsel so as to (1) promote compliance with the law through effective counseling, (2) ensure

cations undermines the salutary purposes by inhibiting free and open communications, in light of the weakened protection and associated uncertainties. *Accord Upjohn,* 449 U.S. at 393, 101 S.Ct. at 684 ("[I]f the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected.").[5]   In this regard, Appellants believe lawyers will be reticent to provide advice where there is a significant chance this will be employed adversely to the client.   *See* 8 Wigmore, Evidence § 2320 (highlighting the "necessity of preventing the use of [an attorney's] statements as admissions of the client ..., or as leading to inferences of the tenor of the client's communications"). In particular, Appellants posit that a restrictive approach will inhibit written communications such as opinion letters.[6]

More broadly, it is Appellants' position that centering the privilege on the purpose of the communications, rather than

> effective advocacy for the client, (3) ensure access to justice and (4) promote the proper and efficient functioning of the American adversary system of justice[.]
> American Bar Association Task Force on the Attorney–Client Privilege, Recommendation 111 (adopted by ABA House of Delegates, Aug. 2005), *cited in,* Brief for *Amici* Ass'n of Corporate Counsel, *et al.* at 7.

**5.**   *Accord Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 863 (3d Cir.1994) ("If we intend to serve the interests of justice by encouraging consultation with counsel free from the apprehension of disclosure, then courts must work to apply the privilege in ways that are predictable and certain.   'An uncertain privilege-or one which purports to be certain, but rests in widely varying applications by the courts-is little better than no privilege.' " (quoting *In re von Bulow,* 828 F.2d 94, 100 (2d Cir.1987))).   *See generally* Brief for *Amici* Ass'n of Corporate Counsel, *et al.,* in *Nationwide Mut. Ins. Co. v. Fleming,* 605 Pa. 468, 992 A.2d 65 (2010) (No. 32 WAP 2007), at 16 ("The Superior Court's holding will reduce Pennsylvania's attorneys to guessing when their own legal advice may be privileged, leaves clients uncertain as to when their lawyers' communications are confidential, and, consequently, will significantly disrupt the free and candid exchange of information between attorneys and clients.").

**6.**   *See also* Brief for *Amici* Ass'n of Corporate Counsel, *et al.* at 11 ("It would be a great disservice to the legal profession and their clients to yield a rule encouraging important client decisions to be based only on legal advice communicated orally to clients simply because counsel could not trust that their opinion letters would be protected from disclosure to their clients' adversaries.").

the direction of flow, best serves the overall interests of justice. *See generally In re Investigating Grand Jury of Phila. County No. 88–00–3503*, 527 Pa. 432, 440, 593 A.2d 402, 406 (1991) ("The intended beneficiary . . . is not the individual client so much as the systemic administration of justice which depends on frank and open client-attorney communication." (citing, *inter alia, Search Warrant B–21778*, 513 Pa. at 441, 521 A.2d at 428)). Appellants maintain that strict and formalistic limits on derivative protection are unrealistic and unworkable, on account of the close relationship between client confidences and responsive advice. This point is stated by one group of *amici,* as follows:

> [t]he Superior Court's Opinion, and its decision in *Fleming,* is premised on the erroneous assumption that a lawyer, whether it is outside or in-house counsel, can communicate with a client for the purpose of providing legal advice in a manner that does not reveal, reflect, or lead to inferences about confidential client communications. However, "attorney advice and client input are often inextricably intermixed." *Fleming* [, 605 Pa. at 479, 992 A.2d at 71 (opinion in support of reversal) ]. In fact, "it is absurd to suggest that any legal advice given does not at least implicitly incorporate or, at a minimum, give a clue as to what the content of the client communication was to which the lawyer's responsive legal advice is given." [Edna Selan] Epstein[, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 10 (5th ed.2007) ]. Under the Superior Court's approach, the only inquiry in determining whether an attorney's communication to a client is privileged is whether that communication "reveals" a previous confidential communication from the client to the attorney. "Whatever the conceptual purity of this 'rule,' it fails to deal with the reality that lifting the cover from the [legal] advice [provided by an attorney] will seldom leave covered the client's communication to his lawyer." *In re LTV Secs. Litig.,* 89 F.R.D. [595, 603 (N.D.Tex.1981) ].

\*    \*    \*

The Superior Court's constricted view of the attorney-client privilege requires lawyers, clients, and courts to make "surgical separations" of communications based on client confidences from communications based on other sources. *Spectrum Sys. Int'l Corp. [v. Chemical Bank,* 78 N.Y.2d 371, 575 N.Y.S.2d 809], 581 N.E.2d [1055,] 1061 [ (N.Y.1991) ]. In practice, drawing such distinctions "would be imprecise at best." *In re LTV Secs. Litig.,* 89 F.R.D. at 603. Determining what documents are privileged will have the practical effect of unnecessarily complicating the court's *in camera* review of claimed privilege documents and result in affidavits and depositions of attorneys to determine where they obtained the information used as a basis for their legal advice.

Brief for *Amici* Ass'n of Corporate Counsel, *et al.* at 17, 20.[7]

██ Accordingly, consistent with the approach of the Restatement Third, Appellants contend the privilege should extend to all attorney-to-client communications containing advice, analysis, and/or legal opinions. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 69.[8] Appellants acknowledge, "[r]egrettably," that the judicial decisions have not been

---

7. *See also In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984) ("In a given case, advice prompted by the client's disclosures may be further and inseparably informed by other knowledge and encounters."); *Spectrum Sys. Int'l Corp.,* 575 N.Y.S.2d 809, 581 N.E.2d at 1060 (describing "inordinate practical difficulties" associated with a close, derivative approach to the attorney-client privilege).

8. Appellants and their *amici* do appreciate that there are well-recognized limits and exceptions to the attorney-client privilege, including the central requirement that protected communications be for the purpose of securing or providing professional legal services. Thus, they acknowledge, the privilege does not extend to business advice or protect clients from factual investigations. *See Upjohn,* 449 U.S. at 395-96, 101 S.Ct. at 685-86. Exceptions include the crime-fraud exception. *See Investigating Grand Jury,* 527 Pa. at 441-42, 593 A.2d at 406-07. Appellants and their *amici* also recognize the need for courts to guard against the possibility of abuse. *See generally* Brief for *Amici* Ass'n of Corporate Counsel, *et al.* at 10-11 n.5 ("Nothing in this brief should be construed as an endorsement of any practice, either by outside or in-house counsel, of failing to provide legitimate discovery through an overbroad interpretation of the privilege or of failing to timely or adequately identify claimed privileged documents that have been withheld from discovery.").

consistent but advocate in favor of the line extending broader coverage.[9]

As to *Fleming*, Appellants stress that the purpose of the privilege—to encourage full and frank communications, *see supra* note 1—is recognized in the opinions of all Justices. Further, Appellants infer from the lead opinion's conclusion that the privilege was waived that the Justices supporting affirmance, like those supporting reversal, believed the privilege pertained in the first instance. *See* Brief for Appellants at 21 (explaining that the finding of waiver "begs the question: if there is no privilege, what is there to waive?").

Appellants conclude with a request for a clear articulation from this Court endorsing the broader approach to the privilege. *Accord* Brief for *Amici* Ass'n of Corporate Counsel, *et al.* at 2 ("Amici urge the Court to reverse the Superior Court with a clear statement that communications made within the lawyer/client relationship are privileged when made for the very purpose of soliciting or providing legal advice.").

Several of Appellants' *amici* focus specifically on the privilege as it applies to in-house counsel, asserting that, given their proximity to the employer/client's business affairs, they are uniquely subject to the intertwining of advice and confidential information. Along these lines, Energy Association of Pennsylvania offers the following observations:

**9.** *See* Brief for Appellants at 13–14 (citing *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 46 (N.D.Cal.1971); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 37 (D.Md.1974); *Byrd v. Arkansas*, 326 Ark. 10, 929 S.W.2d 151, 154 (1996)); Reply Brief for Appellants at 1–2 (citing *SEPTA v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 265 (E.D.Pa. 2008)); *see also In re Ford Motor Co.*, 110 F.3d 954, 965 n. 9 (3d Cir.1997) ("[T]he entire discussion between a client and an attorney undertaken to secure legal advice is privileged, no matter whether the client or the attorney is speaking."); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir.1980) ("Legal advice or opinion from an attorney to his client, individual or corporate, has consistently been held by the federal courts to be within the protection of the attorney-client privilege."); *Sedat, Inc. v. DER*, 163 Pa.Cmwlth. 29, 35, 641 A.2d 1243, 1245 (1994) ("It is well settled that legal advice given by an attorney in his professional capacity in response to a client inquiry is immune from discovery on the basis of the attorney-client privilege pursuant to Rule 4003.1."). *See generally* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §§ 68–70 & § 69 cmt. i.

Members of the Energy Association conduct their business in highly regulated environments, and they rely on their counsel—particularly those in their own legal departments—to monitor changes in statutes, regulations and judicial and agency interpretations of the law and then to advise corporate managers about those changes and how corporations should respond to them. They likewise rely on their in-house lawyers to serve as ongoing monitors of corporate compliance with the law. The lawyers who regularly serve the Energy Association's members, especially the counsel who are full-time employees, are exposed to a continuous stream of client communications (many of which are clearly confidential client communications in the traditional sense). These client communications are not only oral and written, but are observational as well. A business that brings a lawyer inside its operations does so with the expectation that the lawyer will observe its operations, so that the lawyer can proactively render advice without waiting for a formal, discrete request. Providing the opportunity for such observation is a form of client communication to the lawyer and is, in essence, a standing request for legal advice. The lawyer's advice, in turn, is necessarily based on the totality of client communications.

To disclose the lawyer's advice is necessarily to disclose something about the operation of the client's business that was communicated to the lawyer through various media, including the lawyer's privileged observations. The disclosure of the client's communication, either explicitly or inferentially, occurs regardless of whether that advice is rendered in response to a discrete client request for legal guidance or whether it is rendered proactively as a result of the client's standing invitation to its counsel to observe and advise.

Brief for *Amicus* Energy Ass'n of Pa. at 1–2. *See generally Upjohn*, 449 U.S. at 392, 101 S.Ct. at 684 ("The narrow scope given the attorney-client privilege by the court below not only makes it difficult for corporate attorneys to formulate sound advice when their client is faced with a specific legal problem

but also threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law."). According to this *amicus*, "[a] reliably confidential relationship between counsel and client is needed more than ever for companies to operate as the good citizens the people of the Commonwealth expect them to be." Brief for *Amicus* Energy Ass'n of Pa. at 3.

Finally, several *amici* argue that, even if this Court were to discern a legislative intent underlying Section 5928 consistent with the Superior Court's narrow approach to the privilege, Article V, Section 10(c) of the Pennsylvania Constitution allocates the decisional authority on the subject to this Court. *See* PA. CONST. art. V, § 10(c) (investing the Court with procedural rulemaking authority).

Appellee opens, in his initial statement of jurisdiction, with the observation that this appeal was taken as of right under the collateral order doctrine. He then references the United States Supreme Court's recent decision in *Mohawk Industries, Inc. v. Carpenter*, —— U.S. ——, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009), for the proposition that interlocutory appellate review does not extend as of right to discovery disputes centered on the assertion of the attorney-client privilege. *See id.* at ——, 130 S.Ct. at 609. Appellee indicates that this Court needs to decide whether to depart from the contrary approach prevailing under its own decision in *Ben v. Schwartz* to follow *Mohawk*.

On the merits, Appellee initially "agrees that attorney 'advice, analysis, and/or opinions' is privileged if confidential client communications are intermixed." Brief for Appellee at 10.[10] He stresses, however, that the common pleas court (at

10. Appellee regards the derivative protection afforded by the privilege as a judicially-created "corollary doctrine." *Accord CaremarkPCS Health, L.P.*, 254 F.R.D. at 257 ("The attorney-client privilege has historically been applied only to 'communications from a client to an attorney,' but 'Pennsylvania courts have ... developed a corollary doctrine covering communications from an attorney to a client when such communications reflect the communications from the client to the attorney.' " (quoting *Santer v. Teachers Ins. & Annuity Ass'n*, No. 06–CV–1863, 2008 WL 821060, at *1 n. 3 (E.D.Pa. Mar. 25, 2008))); *Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 186

least in its Rule 1925 opinion) did allow for derivative protection. *See id.* at 9 ("Contrary to the Appellants' statement of the Case, the trial court did *not* make a ruling that all communications from the attorneys to the client are outside the protection of the attorney-client privilege." (emphasis in original)). It is his position that Appellants simply failed, upon the common pleas court's *in camera* inspection, to establish that attorney-created documents contained confidential information conveyed from the clients. *Accord Gillard*, No. 1065 EDA 2007, *slip op.* at 5 ("Neither at argument before the trial court nor in their merit brief or reply brief to this Court do the insurance companies assert that the communications of the attorneys to the client would reveal confidential communications *from the client.*" (emphasis in original)). Further, according to Appellee, Appellants failed to assert that the withheld documents so much as contained advice, opinion, and/or analysis at the common-pleas level.[11]

Appellee also criticizes any extension of the attorney-client privilege beyond close derivative protection, denominating such expansion as inappropriate judicial interference with the prevailing legislative scheme. *See* Brief for Appellee at 22 ("With all due respect to this Court, Appellee submits that it is the role of the courts to interpret statutes enacted by the General Assembly[, ... not to] substitute its own policy determinations whenever this Court believes the General Assembly enacted a statute outside of the majority rule, and which this Court believes may affect the Commonwealth's financial well-being with corporations."). While Appellee acknowledges the argument that the authority to determine the

F.Supp.2d 567, 571–72 (E.D.Pa.2002) ("A corollary to the rule, crafted by Pennsylvania courts, cloaks communications from the attorney to the client with privilege if disclosure of the communication would reveal the communications from the client to the attorney.").

11. In this last regard, it was certainly implicit in Appellants' averments that the withheld documents contained legal advice, as, for example, they advanced a line of argument centered on the application of the advice-of-counsel defense. Presumably, Appellants did not press the position that the withheld documents contained legal advice at the *in camera* proceeding in light of the common pleas court's focus on the direction of flow, as well as its characterization of its ruling as a blanket one. *See* N.T., Mar. 29, 2007, at 8–9, 27.

scope of the privilege appropriately rests with this Court under Article V, Section 10(c) of the Pennsylvania Constitution, he tersely couches this position as reflecting *amici's* improper belief that "it is the role of this Court to substitute its policy determinations for that of the legislature [sic] branch." *Id.* at 22 n. 7.

According to Appellee, strong policy concerns influenced the General Assembly to take a narrow approach to the codification of the attorney-client privilege, *id.* at 10, including the adverse impact on the truth-determining process of a broadly applied privilege. Indeed, Appellee asserts that public policy favors strict construction of all testimonial exclusionary privileges. *See id.* at 24 (citing *Ebner v. Ewiak,* 335 Pa.Super. 372, 377, 484 A.2d 180, 183 (1984) ("Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public ... has a right to every man's evidence.' ... As such, they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.' " (quoting *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980)))); *accord Commonwealth v. Stewart,* 547 Pa. 277, 282, 690 A.2d 195, 197 (1997). Appellee contends that an extension of the privilege to advice, analysis, and/or opinion will foster uncertainty as to the scope of the protection, and that *in camera* review proceedings will proliferate as a result. Furthermore, Appellee asserts, attorney analysis and opinion already is governed by the work product doctrine under Rule of Civil Procedure 4003.3, which would be rendered meaningless under Appellants' broad approach to the attorney-client privilege.

As to *Earle,* Appellee draws support from *Coregis* in contending that the decision had been displaced. *See Coregis,* 186 F.Supp.2d at 570 n. 2 ("Given that the Pennsylvania Supreme Court has never cited to *Earle* in the past 110 years, although having repeated opportunity to do so, and that the legislature in 1976 re-enacted the original attorney-client privilege statute, which is plainly at odds with *Earle,* the court concludes

that *Earle* was either overruled by the legislature directly or by the Pennsylvania Supreme Court sub silentio."). In any event, Appellant does not regard *Earle* as a legitimate reconciliation of a broad approach to the privilege with the statutory treatment. *See* Brief for Appellee at 14 (highlighting that *Earle* "does not use the word 'privilege,' let alone the words 'attorney-client privilege' "); *cf.* *Coregis*, 186 F.Supp.2d at 570 n. 2 (noting that "[a]lthough the predecessor to § 5928 was already on the books, [*Earle* ] did not cite to it and did not purport to interpret the statute.").

Appellee's argument thus returns to Section 5928, which he contends is appropriately encapsulated by *Coregis*, as follows:

> By its very terms, the statute cloaks with privilege communications from the client to the attorney but does *not* extend an equal and full protection to those communications flowing from the lawyer to the client. The apparent one-sidedness of the Pennsylvania statute on attorney-client privilege is not a matter of whim or oversight, but rather it is based on sound policy judgments.

*Coregis*, 186 F.Supp.2d at 569 (citations omitted) (emphasis added). In this regard, Appellee also points back to the *Slater*, *Maguigan*, and *Wood* decisions, expressing the privilege in the narrower terms. *Accord Commonwealth v. Chmiel*, 585 Pa. 547, 599, 889 A.2d 501, 531 (2005) (plurality, in relevant part) ("[T]he privilege applies only to confidential communications made by the client to the attorney in connection with the provision of legal services.").[12]

Finally, Appellee asserts that the broader matters discussed in the *amicus* briefs, such as issues faced by corporate counsel, simply are not pertinent to the limited controversy presently before the Court.

## I. Propriety of the Interlocutory Appeal

As noted, Appellee initially highlights the difference between the prevailing application, in Pennsylvania, of the collat-

12. *See also Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1222 (Pa.Super.2003) (citing *Slater* and *Commonwealth v. duPont*, 730 A.2d 970 (Pa.Super.1999)); *Commonwealth v. Hetzel*, 822 A.2d 747, 757 (Pa.Super.2003) (citing *duPont* ).

eral order doctrine to discovery orders requiring disclosure over the assertion of a privilege, and the federal approach, under the recent *Mohawk* decision, which denies interlocutory appellate review as of right of such orders. *See Mohawk,* ——— U.S. at ———, 130 S.Ct. at 609.

In *Commonwealth v. Harris,* No. 8 EAP 2009, this Court recently requested briefing and entertained argument on the question of whether we should adopt the *Mohawk* approach to Pennsylvania collateral order review. Pending our resolution of the question in an appropriate case, however, the decision in *Ben v. Schwartz* governs. Since the Superior Court followed *Ben v. Schwartz,* and this case was not accepted for further consideration of the collateral order doctrine, we will proceed to the merits question, which has been ably argued by the parties and *amici.* *Cf. Castellani v. Scranton Times, L.P.,* 598 Pa. 283, 292 n. 5, 956 A.2d 937, 943 n. 5 (2008).

## II. Scope of the Attorney–Client Privilege

█ As is apparent from the above, Pennsylvania courts have been inconsistent in expressing the scope of the attorney-client privilege.[13] Presumably, the disharmony relates to the ongoing tension between the two strong, competing interests-

---

13. In his dissent, Mr. Justice McCaffery finds no such inconsistency, relegating to the "occasional sentence taken out of context," Dissenting Opinion, at 94, 15 A.3d at 62 (McCaffery, J.), all decisions which have expressed the broader view of the privilege. *See, e.g., Search Warrant B–21778,* 513 Pa. at 441, 521 A.2d at 428 ("The purpose of this time-honored privilege is to protect confidential communications *between* the lawyer and his client, and to foster the free exchange of relevant information *between* them." (emphasis added)); *Alexander,* 253 Pa. at 203, 97 A. at 1065 ("The general rule is, that all professional communications are sacred." (citation and quotation marks omitted)); *Earle,* 196 Pa. at 221, 46 A. at 269; *Sedat,* 163 Pa.Cmwlth. at 35, 641 A.2d at 1245 ("It is well settled that legal advice given by an attorney in his professional capacity in response to a client inquiry is immune from discovery on the basis of the attorney-client privilege pursuant to Rule 4003.1."); *Cohen,* 238 Pa.Super. at 462 n. 2, 357 A.2d at 692 n. 2 (observing that the original statute "has been treated as a restatement of the principle of attorney-client privilege as it existed at common law."); *accord* Pa.R.P.C. 1.6 cmt. [2] (observing that the "fundamental principle" that communications between lawyers and clients are confidential contributes to the "trust that is the hallmark of the client-lawyer relationship"). Like Appellants and their *amici,* we obviously take a different view.

of-justice factors in play—namely—the encouragement of trust and candid communication between lawyers and their clients, *see supra* note 1, and the accessibility of material evidence to further the truth-determining process. In light of this conflict, very good arguments are made on both sides concerning the privilege's appropriate breadth. *See generally* Grace M. Giesel, *The Legal Advice Requirement of the Attorney–Client Privilege: A Special Problem for In–House Counsel and Outside Attorneys Representing Corporations,* 48 MERCER L.REV. 1169, 1172 (1997) ("At least since the time of Jeremy Bentham, a debate has raged about the benefits and burdens of the attorney-client privilege.").

Initially, here and elsewhere, it is now recognized by all that the privilege does afford derivative protection. Moreover, it is our own considered judgment, like that of the United States Supreme Court, that—if open communication is to be facilitated—a broader range derivative protection is implicated. *See Upjohn,* 449 U.S. at 394–95, 101 S.Ct. at 685. In this regard, we agree with those courts which have recognized the difficulty in unraveling attorney advice from client input and stressed the need for greater certainty to encourage the desired frankness. *See, e.g., id.; see also supra* note 5. Indeed, we believe it would be imprudent to establish a general rule to require the disclosure of communications which likely would not exist (at least in their present form) but for the participants' understanding that the interchange was to remain private.

We acknowledge Appellee's arguments relative to Section 5928. Nevertheless, we do not find it clear that the Legislature intended strict limits on the necessary derivative protection. *Cf. Search Warrant B–21778,* 513 Pa. at 441, 521 A.2d at 428 (characterizing the attorney-client privilege as a "broad privilege"). While, in light of *Earle's* brevity and relative obscurity, reliance on the legislative presumption pertaining to reenactments (1 Pa.C.S. § 1922(4); *see generally supra* note 3) may be regarded as somewhat of a fiction, *Earle* dovetails with our own present assessment concerning the privilege's proper application. Moreover, and in any event, statutory construction frequently entails resort to necessary,

legitimate, and expressly authorized assumptions about legislative purposes.

In his dissent, Justice McCaffery chastises us for legislating, asserting that Section 5928 "could be hardly clearer," and thus, contending that it is inappropriate for us to refer to authorized presumptions concerning legislative intent. Dissenting Opinion, at 92, 95–96, 15 A.3d at 61, 63 (McCaffery, J.). Nevertheless, this dissent acknowledges: "[a]lthough the statute expressly refers only to communications made by the *client* to his/her or its attorney, our appellate courts have consistently recognized the need for a derivative privilege to protect communications made by an attorney to a client to the extent that they are based upon confidential facts initially disclosed by the client to the attorney." *Id.* at 93–94, 15 A.3d at 61; *cf. supra* note 10 (reflecting Appellee's couching of derivative protection as a judicially-created "corollary doctrine").

Accordingly, the dissent itself recognizes that it is not possible to employ close literalism relative to Section 5928 and, at the same time, give effect to its purpose of facilitating open communication in soliciting legal advice. There is, therefore, material ambiguity in the scope of the universally-recognized (but legislatively unstated) derivative protection, and we regard our disagreement with the dissents as one of degree rather than direction. For this reason, we also believe that, in determining the appropriate scope of this derivative protection, it is essential to consider the underlying purpose of the privilege. Such approach is consistent with logic and established principles of statutory construction. In terms of those purposes, we appreciate that client communications and attorney advice are often inextricably intermixed, and we are not of the view that the Legislature designed the statute to require "surgical separations" and generate the "inordinate practical difficulties" which would flow from a strict approach to derivative protection. *Spectrum Sys. Int'l Corp.*, 575 N.Y.S.2d 809, 581 N.E.2d at 1060.

■ We also agree with *amici* that, under the Pennsylvania Constitution, this Court does maintain a role beyond the mere construction of statutes in determining the appropriate scope

of testimonial privileges.[14] Presently, given our determination that the Legislature has not manifested a desire to cabin our involvement, it is beyond the scope of this opinion to determine the limitations on the power of our respective branches of government relative to privilege matters.

██ Finally, as in other areas, we acknowledge the possibility for abuses. *See, e.g.,* Gregory C. Sisk & Pamela J. Abbate, *The Dynamic Attorney–Client Privilege*, 23 Geo. J. Legal Ethics 201, 230–35 (2010) (discussing the "ruse abuse," in which ordinary business matters are disguised as relating to legal advice). For the present, at least, we believe the existing practices, procedures, and limitations, including *in camera* judicial review and the boundaries ascribed to the privilege, *see supra* note 8, are sufficient to provide the essential checks.[15]

██ We hold that, in Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential

14. As highlighted by various *amici,* this Court promulgated the Pennsylvania Rules of Evidence governing admissibility, as well as the Rules of Civil Procedure establishing the framework and scope of discovery, under its procedural rulemaking authority. *See* Pa.R.E. 101(b); Pa. R.Civ.P., Adoption of Rules of Civil Procedure.

Indeed, in his arguments, Appellee accepts the legitimacy of the work-product privilege reflected in this Court's rules. *See* Brief for Appellee at 23 (citing Pa.R.Civ.P. No. 4003.3).

15. Mr. Justice Eakin offers an example of one abusive situation in which a client-insurer disregards counsel's admonition that there is no legal basis to deny a claim. *See* Dissenting Opinion, at 90, 15 A.3d at 59–60 (Eakin, J.). According to the dissent, treating the advice as privileged does not protect any client disclosures. *See id.*

Initially, we question the dissent's apparent premise that advice concerning the validity of defenses invariably can be separated from client confidences regarding the claim. Moreover, exceptions may apply in such circumstances depending on variables not considered by the dissent. For example, where a client blatantly disregards the law and is untruthful in submissions to the courts, the crime-fraud exception may apply. *See supra* note 8. *See generally* Lewis E. Hassett and Cindy Chang, *Bad Faith Allegations Versus an Insurer's Attorney–Client Privilege,* 9 No. 11 Ins. Coverage L. Bull. 1 (Dec.2010) (discussing the crime-fraud exception and other approaches to waiver of the attorney-client privilege in the context of bad-faith litigation conduct). At a minimum, the insurer acting in bad faith will be deprived of an advice-of-counsel defense (or, alternatively, risk revelation of what counsel actually said).

client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice.[16]

The order of the Superior Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Chief Justice CASTILLE, Justices BAER, TODD and ORIE MELVIN join the opinion.

Justice EAKIN files a dissenting opinion.

Justice McCAFFERY files a dissenting opinion.

Justice EAKIN, dissenting.

I cannot agree with the majority that the attorney-client privilege applies with equal force to attorney-to-client communications as it does to client-to-attorney communications. Certainly a derivative privilege equally protects those attorney-to-client communications containing client-to-attorney communication,[1] but where the communication contains no information at all emanating from the client, and the communi-

16. Contrary to Appellee's argument, our holding does not obviate the work product privilege. Such privilege, unlike the attorney-client privilege, does not necessarily involve communications with a client. *See* Pa.R.Civ.P. No. 4003.3 (exempting from discovery "disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories"). Moreover, while it is beyond the scope of this opinion to determine the precise breadth of the privilege, we note that Rule 4003.3, on its overall terms, manifests a particular concern with matters arising in anticipation of litigation. *See Nat'l R.R. Passenger Corp. v. Fowler*, 788 A.2d 1053, 1065 (Pa.Cmwlth.2001) (indicating that "[t]he 'work product rule' is closely related to the attorney-client privilege but is broader because it protects any material, regardless of whether it is confidential, prepared by the attorney in anticipation of litigation"). *But see Sedat*, 163 Pa.Cmwlth. at 34, 641 A.2d at 1245 (holding that "anticipation of litigation is not a prerequisite to the application of the work product doctrine as it pertains to the work product of attorneys acting in their professional capacity.").

Thus, while the two privileges overlap, they are not coterminous.

1. The trial court conducted an *in camera* review of all relevant documents, and the documents now at issue do not contain information emanating from the client.

cation is relevant to the legal rights at issue in a separate and distinct action, I would not find it covered by a blanket privilege.

Appellee Gillard was injured January 21, 1997. He had paid premiums to appellants for $200,000 in uninsured motorist coverage. On the eve of arbitration, appellants offered full policy limits, having theretofore made no settlement offer at all. This delay led to the present suit, wherein Gillard alleges the seven-year refusal to honor the claim, followed by the 11th hour acknowledgment of full liability, shows a breach of the duty to act in good faith.

The pronouncement of my colleagues, certainly thoughtful and well-reasoned, would make privileged all communications from counsel to the client, regardless of content, even when no information from the client is revealed. Such an extension of the statute leads to an easily applied result, but I believe this is too broad. Suppose (whether true in this case or not, for we are announcing a rule of applicability beyond the present case), that counsel advised the client in year one that there was no legal basis for denying the underlying claim, or that there was no legal basis for delaying payment. Suppose the client replied that they did not care; they were not going to pay until they were made to do so. The reply is privileged, for all the significant policy reasons advanced herein by appellants and *amici*. But what is the salience of calling counsel's original warning privileged? It does not protect any disclosures the client made, and it denies evidence to the finder of fact that bears significantly on the claim of bad faith.

One must assume the defense to the bad faith claim includes an assertion the failure to offer settlement was predicated, at least in part, on a belief that there was a legitimate legal basis for contesting payment. If counsel's advice was to the contrary, can appellants still assert good faith while hiding this fact under a claim of privilege?

The attorney-client privilege is a limited evidentiary privilege, and privileges are exceptions to normal evidentiary concepts and rules:

Testimonial exclusionary rules and privileges contravene the
fundamental principle that " 'the public ... has a right to
every man's evidence.' " As such, they must be strictly
construed and accepted "only to the very limited extent that
permitting a refusal to testify or excluding relevant evidence
has a public good transcending the normally predominant
principle of utilizing all rational means for ascertaining
truth."

*Commonwealth v. Spetzer*, 572 Pa. 17, 813 A.2d 707, 717 (2002)
(quoting *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct.
906, 63 L.Ed.2d 186 (1980)) (internal citations omitted).  Penn-
sylvania's attorney-client privilege statute provides, "In a civil
matter counsel shall not be competent or permitted to testify
to confidential communications made to him by his client, nor
shall the client be compelled to disclose the same, unless in
either case this privilege is waived upon the trial by the
client."  42 Pa.C.S. § 5928.  Because § 5928 unambiguously
applies the attorney-client privilege only to those communica-
tions made by the client, the attorney-client privilege cannot
apply to communications made by the attorney.  *See* 1 Pa.C.S.
§ 1921(b) ("When the words of a statute are clear and free
from all ambiguity, the letter of it is not to be disregarded
under the pretext of pursuing its spirit.").[2]

I acknowledge the arguments advanced for extending the
attorney-client privilege to protect attorney-to-client communi-
cations.  It may be that the Court should expand the attorney-
client privilege by Rule, after publication and comment, but we
have not done so.  Alternatively, it may be appropriate for the

2.  Given the statute's plain language, and the narrow construction given
to evidentiary privileges, I cannot agree the General Assembly intended
the attorney-client privilege to be broader than provided for in § 5928.
The majority relies upon our statement that the attorney-client privilege
is a " 'broad privilege.' " Majority Op., at 86, 15 A.3d at 57 (quoting *In
re Search Warrant B–21778*, 513 Pa. 429, 521 A.2d 422, 428 (1987)).
However, in *Search Warrant B–21778*, we also observed the privilege
"provides security that the information and facts revealed *by the client*
will not be seized and used by others to his or her detriment." *In re
Search Warrant B–21778*, at 428 (emphasis added).  While the case
holds the privilege is broad, it is broad in one direction only.  Other-

General Assembly[3] to consider these various policy concerns and craft an expansion of the privilege statute, if deemed appropriate. Accordingly, I must offer this dissent.

Justice McCAFFERY, dissenting.

Relying primarily on policy-based arguments, the majority reads a provision not enacted by the General Assembly into the Pennsylvania attorney-client privilege statute. With this decision, the majority has, in my view, acted in a legislative capacity, and therefore, I must respectfully dissent.

The attorney-client privilege as codified in this Commonwealth could hardly be clearer; it expressly applies to "confidential communications made to [counsel] by his [or her] client." 42 Pa.C.S. § 5928. This Court recently stated the following with regard to application of this privilege:

> "The attorney-client privilege has been a part of Pennsylvania law since the founding of the Pennsylvania colony, and has been codified in our statutory law." *In re Estate of Wood*, 818 A.2d 568, 571 (Pa.Super.2003).... While the attorney-client privilege is statutorily mandated, it has a number of requirements that must be satisfied in order to trigger its protections. **First and foremost is the rule that the privilege applies only to confidential communications made by the *client* to the attorney in connection with the provision of legal services.** *Slater v. Rimar, Inc.*, 462 Pa. 138, 338 A.2d 584, 589 (1975).

*Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 531 (2005) (plurality)[1] (emphasis added); *see also Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327, 1337 (1986) (in another criminal case, again citing *Slater, supra,* for the proposition that the application of the attorney-client privilege

wise, privileges are limited and must be strictly construed. *Spetzer,* at 717.

3. We did not grant allocatur on the constitutionality of § 5928, or which branch of government had authority to delineate the attorney-client privilege; *amici's* arguments that the General Assembly lacked authority to enact the limited privilege set forth in § 5928 are not before us.

1. Only two justices of the six participating in *Chmiel* joined the majority opinion; however, no justice disputed the above-quoted statement of law.

is "limited to confidential communications and disclosures made by the client to his legal advisor for the purpose of obtaining his professional aid or advice");[2] *The Birth Center v. The St. Paul Companies, Inc.,* 727 A.2d 1144, 1164 (Pa.Super.1999) (recognizing that the attorney-client privilege "only bars discovery or testimony regarding confidential communications made by the client during the course of representation" and holding, therefore, that two letters prepared by St. Paul's counsel were not protected by the privilege because they contained no confidential communication from St. Paul to its attorney).

Although the statute expressly refers only to communications made by the **client** to his/her or its attorney, our appellate courts have consistently recognized the need for a derivative privilege to protect communications made by an attorney to a client to the extent that they are based upon confidential facts initially disclosed by the client to the attorney. *See In re Condemnation by the City of Philadelphia,* 981 A.2d 391, 396 (Pa.Cmwlth.2009) ("The attorney-client privilege applies in both criminal and civil matters, [ ] to confidential communications made by a client to his or her attorney in connection with legal services and by an attorney to the client when based upon confidential facts that the client has disclosed."); *Slusaw v. Hoffman,* 861 A.2d 269, 273 (Pa.Super.2004) ("In addition to confidential communications which flow from a client to his or her attorney, we have held that the attorney-client privilege applies to confidential communications which flow from an attorney to his or her client to the extent the communications are based upon confidential facts that the client disclosed initially to the attorney.").

Here, the majority ignores the plain text of the statute and decades of decisional law faithful to that statutory text to hold that the privilege operates in a "two-way fashion" not only to protect confidential client-to-attorney communications, but

---

**2.** I recognize that both *Chmiel, supra* and *Maguigan, supra,* are criminal cases, and that the attorney-client privilege is codified in separate provisions for criminal and civil matters. *See* 42 Pa.C.S. §§ 5916 and 5928, respectively. However, the text of the two provisions is for all relevant purposes identical.

also to protect broadly attorney-to-client communications regardless of whether they implicate confidential facts disclosed by the client. *Gillard v. AIG Insurance Co.,* at 86–87, 15 A.3d at 57–58. In other words, the majority removes the statute-based requirement that attorney-to-client communications be based upon confidential communications initially made by the client to counsel in order to be protected under attorney-client privilege.

As part of the rationale for this departure from the statute, the majority concludes that Pennsylvania courts have been "inconsistent" and characterized by "disharmony" in "expressing the scope of the attorney-client privilege." *Gillard, supra,* at 85, 15 A.3d at 57. I cannot agree with this blanket assertion. While an occasional sentence taken out of context might support the majority's view, my analysis of the facts and holdings of prior cases decided by the appellate courts of this Commonwealth, including this Court, reveals little inconsistency or disharmony in judicial understanding or application of the attorney-client privilege.

The opinions from Pennsylvania courts cited by the majority as precedential or persuasive for the proposition that the Pennsylvania attorney-client privilege statute affords broad two-way protection are not determinative. *See National Bank of West Grove v. Earle,* 196 Pa. 217, 46 A. 268 (1900) (cited by *Gillard, supra,* 72–73, 75, 83–84, 86, 15 A.3d at 48–49, 51, 55, 56), and *Maiden Creek T.V. Appliance, Inc. v. General Casualty Insurance Co.,* No. Civ.A. 05–667, 2005 WL 1712304, at *2 (E.D.Pa. July 21, 2005) (cited by *Gillard, supra,* at 70, 15 A.3d at 47). *Earle* is over 100 years old, never mentions the words "attorney-client privilege," does not purport to interpret the statute, and had never been cited by an appellate court until this Court's divided opinion in *Nationwide Mutual Insurance Co. v. Fleming,* 605 Pa. 468, 992 A.2d 65 (2010). Even the majority concedes that *Earle's* brevity and relative obscurity make reliance on this case somewhat questionable. *Gillard, supra,* at 86, 15 A.3d at 57. *Maiden Creek,* which the majority recognizes as cited by Appellants, is an unpublished federal district court case citing only federal law—notably, **no** Pennsylvania law—for its statement of attorney-client privi-

lege as applied in this Commonwealth.[3]  I simply cannot agree that *Earle* or *Maiden Creek* creates inconsistency or disharmony in the scope of attorney-client privilege as applied to date under the law of this Commonwealth.[4]

3.  It is well established that this Court considers federal district court decisions to be persuasive but not binding authority.  *See, e.g., Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, 589 Pa. 296, 908 A.2d 875, 883–84 n. 10 (2006).

4.  The majority's footnote list of several other opinions purporting to support a broad scope of attorney-client privilege does not, in my view, strengthen the majority's assertion of inconsistency in our decisional law.  *See Gillard, supra,* at 85 n. 13, 15 A.3d at 56 n. 13.

In *Search Warrant B–21778*, 513 Pa. 429, 521 A.2d 422 (1987), this Court held that a client's business records were not protected from discovery merely because the client had given them to his attorney and then claimed attorney-client privilege.  We stated the purpose of the attorney-client privilege as follows:
> The purpose of this time-honored privilege is to protect confidential communications between the lawyer and his client, and to foster the free exchange of relevant information between them.  It provides security that the **information and facts revealed by the client** will not be seized and used by others to his or her detriment.

*Id.* at 428 (emphasis added).

In *Alexander v. Queen*, 253 Pa. 195, 97 A. 1063 (1916), the issue was whether an attorney-client relationship existed between the defendant and a lawyer-acquaintance he had consulted.  Concluding that an attorney-client relationship did exist, we held that the communications made by the client to his attorney were privileged.  *Id.* at 1064.  In *Cohen v. Jenkintown Cab Company*, 238 Pa.Super. 456, 357 A.2d 689 (1976), the issue was whether, under the particular and unusual facts of the case, the court could require disclosure of communications from a client to his attorney.  Explaining the attorney-client privilege, the Cohen court stated the following:
> [T]he communications [the client] so makes to [counsel] should be kept secret, unless with his consent (for it is his privilege, and not the privilege of the confidential agent) ...

*Id.* at 691 (citation omitted).

> It is for the protection and security of clients that their attorneys at law or counsel are restrained from giving evidence of what they have [e]ntrusted to them in that character; so that legal advice may be had at any time by every man who wishes it in regard to his case, whether it be bad or good, favorable or unfavorable to him, without the risk of being rendered liable to loss in any way, or to punishment, by means of what he may have disclosed or [e]ntrusted to his counsel.

*Id.* at 692 (citation omitted).

Thus, in each of the above cases cited by the majority, the issue concerned a client communication to his attorney.

I am also perplexed by the majority's statement that it does "not find it clear that the Legislature intended strict limits on the necessary derivative protection" under the attorney-client privilege. *Gillard, supra,* at 86, 15 A.3d at 57. In general, the best indication of legislative intent is the plain language of a statute. *Malt Beverages Distributors Ass'n v. Pennsylvania Liquor Control Board,* 601 Pa. 449, 974 A.2d 1144, 1149 (2009). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). In my view, the words of the attorney-client privilege statute are clear and free from all ambiguity: "counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same...." 42 Pa.C.S. § 5928. Pursuant to the plain text of Section 5928, it is unmistakably clear that confidential communications by the client are the **only** communications protected. By adding broad protection for counsel's advice and other attorney-to-client communications, regardless of whether or not they implicate confidential client communications, the majority disregards the text and the letter of the statute, in violation of our rules of statutory construction.

The majority attempts to rationalize its disregard of the statutory text by asserting that "in any event, statutory construction frequently entails resort to necessary, legitimate, and expressly authorized assumptions about legislative purpose." *Gillard, supra,* at 86, 15 A.3d at 57. While this is no doubt a true statement, the majority neglects to note that the object of a statute and the occasion and necessity for a statute's enactment are to be considered **only** when the words of a statute are not explicit. 1 Pa.C.S. § 1921(c). The majority does not establish—or even argue—that the words of the

---

The only case in the majority's list arguably consistent with the majority's expansion of the attorney-client privilege is *Sedat, Inc. v. Department of Environmental Resources,* 163 Pa.Cmwlth. 29, 641 A.2d 1243 (1994). We note only that this seventeen-year-old opinion, rendered by a single judge in the Commonwealth Court's original jurisdiction, has never been cited by any appellate court.

attorney-client privilege statute are not explicit, and thus, the majority invokes statutory purpose under circumstances that are not permitted by subsection 1921(c).

The majority claims that I have implicitly acknowledged "material ambiguity" in the attorney-client privilege statute by recognizing derivative protection for attorney to client communications to the extent that they are based upon confidential facts initially disclosed to the attorney by the client. *Gillard, supra,* at 87, 15 A.3d at 58. I cannot agree. It would completely undermine and contradict the clear text of the statute if confidential client to attorney communications lost all protection if those client communications were subsequently mouthed or written by the attorney. Such an interpretation would render the statute absurd. The derivative protection long and uniformly recognized by this Court is in no manner comparable to the majority's broad expansion of the privilege to encompass attorney communications not contemplated by the statutory text.

Finally, I must emphasize that I do not dismiss the policy concerns, as raised by Appellants and the various *amici,* which have apparently convinced the majority that the Legislature did not intend for the attorney-client privilege statute to mean what it says. However, many if not most of these policy concerns are addressed by the work-product privilege, which provides as follows:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The **discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories** . . . .

Pa.R.Civ.P. 4003.3 (emphasis added).

I agree with the majority that it is beyond the scope of the instant case to determine the precise breadth of the work-

product privilege. However, I cannot accept the majority's assertion that its two-way reading of the attorney-client privilege does not totally encompass, and essentially render redundant, the work-product privilege merely based on the latter's limited application to materials prepared in anticipation of litigation. *Gillard, supra,* at 88 n. 14, 15 A.3d at 58 n. 14. I am loath to consider an undeveloped assertion concerning the scope of the work-product privilege as support for a nontextual, policy-based interpretation of the attorney-client privilege statute.

For all of the above reasons, I respectfully but firmly dissent from the majority's holding, and would affirm the order of the Superior Court.